UNITED STATES, Appellee

v.

Robert D. TIPPIT, Staff Sergeant
U.S. Air Force, Appellant

No. 06-0914

Crim. App. No. 35624

United States Court of Appeals for the Armed Forces

Argued February 28, 2007

Decided June 12, 2007

EFFRON, C.J., delivered the opinion of the Court, in which BAKER
and STUCKY, JJ., joined.  RYAN, J., filed a separate opinion
dissenting in part, concurring in part, and concurring in the
result.  ERDMANN, J., filed a dissenting opinion.


Counsel


For Appellant:  Captain Vicki A. Belleau (argued); Lieutenant
Colonel Mark R. Strickland (on brief).

For Appellee:  Captain Donna S. Rueppell (argued); Colonel
Gerald R. Bruce and Major Matthew S. Ward (on brief); Lieutenant
Colonel Robert V. Combs.



Military Judge:  Kurt D. Schuman


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Chief Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted Appellant, pursuant to his pleas, of dereliction of duty, violation of a lawful general regulation, filing a fraudulent reimbursement claim, and wrongful possession of United States Air Force Security Police credentials to the prejudice of good order and discipline, in violation of Articles 92, 132, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 932, 934 (2000). The sentence adjudged by the court-martial and approved by the convening authority included a bad-conduct discharge, confinement for forty-seven days, and reduction to the grade of E-1. The United States Air Force Court of Criminal Appeals affirmed. United States v. Tippit, No. ACM 35624, 2006 CCA LEXIS 186, 2006 WL 2269204 (A.F. Ct. Crim. App. July 14, 2006) (unpublished).

On Appellant's petition, we granted review of four issues related to the litigation of the speedy trial motion at Appellant's court-martial.[1] For the reasons set forth below, we

---

[1] We granted review of the following issues:

I. WHETHER THE MILITARY JUDGE ERRED IN FINDING THERE WAS A "DE FACTO DISMISSAL" OF THE CHARGES AGAINST APPELLANT ON 6 NOVEMBER 2001 THAT WAS DONE FOR A LEGITIMATE REASON.

II. WHETHER THE MILITARY JUDGE ERRED IN FINDING THAT APPELLANT WAS NOT DENIED THE RIGHT TO A SPEEDY TRIAL UNDER ARTICLE 10, UCMJ.

hold that Appellant has not demonstrated error with respect to speedy trial, the effective assistance of counsel, or the providency of his plea.

## I.  BACKGROUND

### A.  THE INITIAL CHARGES

Appellant, a member of the Air Force Reserve, performed inactive duty training at Peterson Air Force Base, Colorado.  On June 11, 2001, the last scheduled day of his inactive duty training tour, Appellant prepared to return to civilian life. He parked his truck near the Security Forces office, his duty location.  At that time, Security Forces personnel were conducting an exercise, and a dog trained in bomb detection alerted on Appellant's truck.  Appellant consented to a search of the vehicle, which yielded a cache of firearms, ammunition, and related items.

The search led to an investigation by the Air Force Office of Special Investigations (AFOSI).  Appellant's tour of duty was extended, and he was placed under restriction until August 1,

---

III.  WHETHER APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL DEFENSE COUNSEL DID NOT INFORM HIM THAT AN UNCONDITIONAL GUILTY PLEA WAIVED THE SPEEDY TRIAL ISSUE UNDER R.C.M. 707.

IV.  WHETHER APPELLANT'S PLEA WAS IMPROVIDENT WHERE IT WAS ENTERED UPON THE MISTAKEN BELIEF THAT HIS R.C.M. 707 SPEEDY TRIAL ISSUE WOULD BE PRESERVED FOR APPEAL.

2001.  During the period of restriction, he was first restricted to the base, and subsequently to the confines of the surrounding county.  As a result of his extended tour of duty and period of restriction, he could not return to Arizona where he maintained his home and held a civilian job.  On August 20, 2001, while the investigation continued, he requested a speedy trial.

Although both parties indicate that charges were first preferred against Appellant on September 6, 2001, the record does not contain the charge sheet, nor does it contain documentation of an official disposition of any such charges. During subsequent litigation at trial, the prosecution indicated that the September 6, 2001 charges were "withdrawn" shortly after preferral, on September 10, 2001, because of an unspecified "administrative error."  The defense did not litigate the content or disposition of the September 6 charges at trial.  Although Appellant has alleged that the trial defense team was ineffective for not addressing the September 6 charges, see infra Part III.B.1., his appellate submissions do not provide further information about the content or disposition of the September 6 charges, nor do such submissions allege that government personnel involved in the processing of such charges were unwilling or unable to provide such information during the appellate proceedings.

4

The first charge sheet that appears in the record of trial contains charges preferred on September 10, 2001.  That charge sheet also documents an additional charge preferred on October 10, 2001.

## B.  DISPOSITION OF THE CHARGES
### PREFERRED ON SEPTEMBER 10, 2001, AND OCTOBER 10, 2001

On September 11, 2001, the Special Court-Martial Convening Authority ordered an investigation under Article 32, UCMJ, 10 U.S.C. § 832 (2000).  As a result of force protection conditions surrounding the national events of September 11, 2001, the investigation was delayed for a week.  The defense requested and was granted further delays until October 10, 2001.  The Article 32 hearing, which began on October 10 and ended on October 12 considered the charges preferred on September 10, as well as the additional charge preferred on October 10.  The Article 32 investigating officer submitted his report to the Special Court-Martial Convening Authority on October 24, 2001.  The report recommended trial by general court-martial on the charges that had been preferred on September 10 and October 10.

While the Article 32 investigating officer's recommendation was awaiting disposition by the Special Court-Martial Convening Authority, the AFOSI conducted a further investigation, including a search of Appellant's home computer.  On October 31, 2001, an AFOSI agent requested a forensic analysis of the

computer by another AFOSI office.  The agent included the following notation in the request:  "[d]ue to a legal mistake, SUBJECT [Appellant] was brought onto active duty under the wrong orders and now his status must be approved by SECAF [Secretary of the Air Force].  The legal office must now drop all charges and refile (the original Article 32 has already been completed)."

On November 2, 2001, the staff judge advocate (SJA) provided the Special Court-Martial Convening Authority with a memorandum regarding Appellant's case entitled "Recommendation to Withdraw Charges."  After noting the Article 32 investigating officer's recommendation for trial by general court-martial, the SJA recommended that "the charges be withdrawn at this time." The SJA stated that "a joint federal law enforcement investigation is ongoing," that AFOSI had developed information from "very reliable sources" about "significant weapons related offenses" involving Appellant "and gun dealers," and that this information would put the charged offenses "into proper context."  The SJA added:  "[w]ithdrawing the charges now will not prohibit re-preferral at a later time -- in approx [sic] three months as this investigation is completed."

Citing Rule for Courts-Martial (R.C.M.) 404, the SJA provided the Special Court-Martial Convening Authority with four options:  "(1) Dismiss the charges, (2) Forward the charges to a

subordinate commander for disposition, (3) Refer charges to a summary or special court-martial, or (4) Forward the Article 32 report with the charges, to the superior commander . . . for disposition." The SJA recommended that the convening authority authorize the SJA "to withdraw charges by lining through the charge sheet." The convening authority wrote "concur" and his initials on the memorandum. On November 6, 2001, the SJA lined out all charges and specifications on the charge sheet, adding the word "withdrawn," as well as his name and the date, near the lines.

### C. ACTIONS FOLLOWING DISPOSITION OF THE SEPTEMBER 10, 2001, AND OCTOBER 10, 2001, CHARGES

Shortly thereafter, the group support commander informed Appellant that the charges had been "dropped." The legal office provided defense counsel with a copy of the charge sheet with the September 10, 2001 and October 10, 2001 charges lined out. The legal office did not provide defense counsel with a reason for this action. Defense counsel showed the document with the lined out charges to Appellant and told him that the charges had been dismissed. On November 6, 2001, the same day that the charges were lined out, Appellant was released from active duty and permitted to return to his home in Arizona. AFOSI continued its investigation, but no constraints were placed upon Appellant's resumption of civilian life.

D.  THE 2002 CHARGES

In January 2002, the command initiated a request to recall Appellant to active duty to face charges.  The Secretary of the Air Force approved the request on May 23, 2002, and Appellant reported for duty on June 7, 2002.  AFOSI released its final investigative report on June 28, 2002.  New charges were preferred on July 2, 2002.  The 2002 charges were substantially the same as the charges preferred on September 10, 2001 and October 10, 2001, with the addition of two new specifications alleging violations of a federal firearms statute, 18 U.S.C. § 922 (2000).

On July 15, 2002, the Special Court-Martial Convening Authority ordered a new investigation under Article 32 and appointed a new investigating officer.  The investigating officer relied on material from the prior Article 32 proceedings, as well as information developed in the new Article 32 hearing.  The investigating officer reviewed and incorporated a substantial amount of the information from the prior Article 32, with certain modifications and without objection by the defense, which had offered to waive the Article 32 proceeding.

The investigating officer issued her report on August 15, 2002, recommending trial by general court-martial.  The Special Court-Martial Convening Authority approved and forwarded the recommendation for trial by general court-martial.  The General

Court-Martial Convening Authority referred the charges to a general court-martial on September 21, 2002.

### E.  APPELLANT'S SPEEDY TRIAL MOTION

#### 1.  Options for litigating speedy trial issues

In the present appeal, the parties have addressed the right to a speedy trial under three different sources of law -- constitutional, statutory, and regulatory.  The constitutional standard provides that the accused in a criminal prosecution "shall enjoy the right to a speedy . . . trial."  U.S. Const. amend. VI.  The Supreme Court has established a four-part test for assessing whether a delay amounts to a Sixth Amendment constitutional violation.  Barker v. Wingo, 407 U.S. 514, 530 (1972) (requiring a balancing of the length of the delay, reasons for the delay, whether the appellant demanded a speedy trial, and any prejudice to the appellant from the delay); see also United States v. Grom, 21 M.J. 53, 56-57 (C.M.A. 1985) (applying the Barker factors to an alleged Sixth Amendment speedy trial right violation).  In addition to the Sixth Amendment, timely processing also is subject to assessment under the Due Process Clause of the Fifth Amendment.  See United States v. Reed, 41 M.J. 449, 451-52 (C.A.A.F. 1995).  The defense has not alleged a due process violation in the present appeal.

United States v. Tippit, No. 06-0914/AF

The statutory standard, Article 10, UCMJ, 10 U.S.C. § 810 (2000), provides that "[w]hen any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him."  See also United States v. Powell, 2 M.J. 6, 7-8 (C.M.A. 1976) (describing circumstances under which certain forms of restriction may trigger the protections of Article 10). Article 10 provides "a more exacting speedy trial" standard than the Sixth Amendment.  United States v. Mizgala, 61 M.J. 122, 124-25 (C.A.A.F. 2005).  The standard under Article 10 for assessing the Government's actions "is not constant motion, but reasonable diligence in bringing the charges to trial."  Id. at 127 (citation and quotation marks omitted).  Although Article 10 establishes a more stringent standard than the Sixth Amendment, we have relied on the Supreme Court's four-part test from Barker v. Wingo to evaluate Article 10 claims.  See United States v. Birge, 52 M.J. 209, 212 (C.A.A.F. 1999).

The regulatory standard set forth in R.C.M. 707 requires that an accused be brought to trial within 120 days of preferral of charges, imposition of restraint, or entry onto active duty, whichever is earliest.  R.C.M. 707(a).  An accused is "brought to trial" within the meaning of the Rule at arraignment.  R.C.M. 707(b)(1); R.C.M. 904.  If charges are dismissed, the clock

stops and a new 120-day period begins upon re-preferral of charges.  R.C.M. 707(b)(3)(A)(i).

2.   Appellant's R.C.M. 707 motion at trial

On November 19, 2002, prior to arraignment, the defense moved to dismiss all of the charges based upon a violation of Appellant's right to a speedy trial pursuant to the 120-day standard set forth in R.C.M. 707.  The defense motion noted that the Sixth Amendment provides an accused with the right to a speedy trial, but did not explain how the processing of Appellant's case violated the Sixth Amendment.  The defense did not allege a violation of Appellant's speedy trial right under Article 10.

With respect to R.C.M. 707, the defense focused its attention on September 10, 2001, as the date on which "the speedy trial clock began."  The defense did not allege that the clock began to run with the September 6, 2001 charges or that there had not been a proper disposition of the September 6 charges.

The defense contended that the speedy trial clock had run continuously since September 10, 2001, taking the position that the command had improperly "withdrawn" the charges in November 2001.  According to the defense, the improper withdrawal did not result in a dismissal of charges required to stop the speedy trial clock under R.C.M. 707(b)(3)(A)(i).

The defense focused on use of the word "withdrawal" on the charge sheet and in the SJA's November 2, 2001, recommendation to the convening authority. The defense noted that the word "withdrawal," as used in the Manual for Courts-Martial, refers to the act of removing charges from a court-martial after referral of those charges to court-martial. See R.C.M. 604. Because charges withdrawn from a court-martial remain in effect and may be referred to another court-martial under the circumstances set forth in R.C.M. 604(b), the act of withdrawal under R.C.M. 604 does not result in dismissal of the charges. The defense added that because the September 10, 2001 and October 10, 2001 charges had never been referred to a court-martial, and thus could not be "withdrawn," they remained in effect for more than 400 days, thereby violating the 120-day limit established by R.C.M. 707.

The defense further contended that the action of the convening authority did not stop the speedy trial clock because the Government had not demonstrated a legitimate reason for dismissing the charges. The defense focused on the October 31, 2001, AFOSI request for a forensic analysis of Appellant's computer, which contained the following comment:

> SUBJECT has been brought on active duty and confined to base pending completion of this investigation. Due to a legal mistake, SUBJECT was brought onto active duty under the wrong orders and now his status must be approved by SECAF [the Secretary of the Air Force].

12

The legal office must now drop all charges and refile
. . . .

According to the defense, the AFOSI document demonstrated that the SJA's stated reason for recommending dismissal of the 2001 charges -- an ongoing joint military-civilian investigation -- merely served as a subterfuge to buy time so that the Government could correct Appellant's orders. The defense also attacked the factual basis for the SJA's statement that there was a joint investigation, or even an ongoing investigation, by relying on AFOSI agents testimony that there were concurrent, but separate investigations and by endeavoring to show that nothing substantially new was discovered after the "withdrawal" of the charges in November 2001. The defense contended that the SJA was simply trying to "rationalize" the delay.

3.  The military judge's ruling on the speedy trial motion

The military judge entered extensive findings of fact and conclusions of law in the course of ruling on the defense speedy trial motion. The military judge found that there was no R.C.M. 707 violation because the speedy trial clock had been stopped by the dismissal of the charges by the Special Court-Martial Convening Authority on or about November 6, 2001. The military judge relied upon the fact that the SJA had informed the convening authority correctly of his disposition options under R.C.M. 404, including dismissal, forwarding the charges to a

subordinate commander, referring the charges to a summary or special court-martial, or forwarding the charges to a superior commander. The military judge cited a number of actions that he viewed as consistent with the choice of dismissal: the concurrence of the convening authority with the recommendation of the SJA to withdraw the charges, "the act of lining out all of the charges and specifications, notification to the accused that the charges had been 'dropped,' and the release of the accused from active duty."

The military judge concluded that the SJA had not used the word "withdrawal" in his November 2, 2001 memorandum to recommend withdrawal of charges under R.C.M. 604. The military judge observed that withdrawal under R.C.M. 604 was possible only after charges had been referred to trial, and that the charges in the present case had not been referred to a court-martial at the time of the SJA's memorandum. The military judge concluded that there was no basis to assume that the SJA intended to recommend that the convening authority undertake the impossible act of withdrawal of the charges under R.C.M. 604 prior to referral. On the contrary, the SJA's intent to recommend dismissal under R.C.M. 404, not withdrawal under R.C.M. 604, was evident both from his proper citation of dismissal as one of the convening authority's options under R.C.M. 404, and from the contemplation of re-preferral of the

14

charges in the future, an act that would have been unnecessary if the charges had been withdrawn, but not dismissed, under R.C.M. 604.

The military judge further found that there was a legitimate reason for the dismissal -- to allow for the completion of the ongoing investigation. Because the 2001 charges had been dismissed for a legitimate reason, the military judge found that the speedy trial clock did not restart until June 7, 2002, when Appellant reported for duty. He calculated that 104 days elapsed from that date to arraignment on the 2002 charges. Accordingly, he concluded that Appellant's right under R.C.M. 707 to be brought to trial within 120 days had not been violated.

Although the defense had not alleged a violation of Appellant's speedy trial right under Article 10, the military judge addressed Article 10 on his own motion in conjunction with his ruling on Appellant's Sixth Amendment claim. The military judge concluded that the Government had proceeded with reasonable diligence, and that any delays did not result in constitutional or statutory prejudice.

4.   Appellant's unconditional guilty plea

Appellant subsequently entered an unconditional guilty plea. After conducting an inquiry into the providence of the plea, the military judge entered findings of guilty.

15

## II.  WAIVER

Under R.C.M. 707(e), an unconditional "plea of guilty which results in a finding of guilty waives any speedy trial issue as to that offense" under the Rule.  Such a plea also waives any speedy trial issue as to that offense under the Sixth Amendment.  See Mizgala, 61 M.J. at 125.  In the present case, Appellant's unconditional guilty plea waived his speedy trial rights under R.C.M. 707 and the Sixth Amendment.  We shall consider them only to the extent that they bear on the granted issues concerning ineffective assistance of counsel and the providence of Appellant's plea.  See infra Parts III and IV.

In Mizgala, we concluded that Article 10 provides a narrow exception to the normal rule that a speedy trial motion is waived by an unconditional guilty plea.  61 M.J. at 126.  Noting the "unique nature of the protections" set forth in Article 10 and the special role of Article 10 in promoting efficiency in the military justice system, we held that "a litigated speedy trial motion under Article 10 is not waived by a subsequent unconditional guilty plea."  Id. at 127 (emphasis added).  We further held that "Mizgala's unconditional guilty plea did not waive his right to contest the military judge's denial of his Article 10 motion on appeal."  Id. (emphasis added).  In short, a servicemember who enters an unconditional guilty plea may appeal a speedy trial claim under Article 10 only if the accused

has invoked Article 10 at trial by filing and litigating an Article 10 motion at trial.  Requiring a litigated Article 10 motion fosters the prompt disposition of military justice cases by promoting the development of an adequate record at trial on the issues required to be addressed under Article 10.  Mizgala provides no authority for an accused to disregard Article 10 in favor of other bases for a speedy trial motion, plead guilty, and then attempt to raise an Article 10 violation on appeal.

Here, the Appellant did not make a motion under Article 10 at trial and did not litigate the speedy trial motion he did make under Article 10.  Appellant focused his motion and arguments on the requirements of R.C.M. 707, with an occasional broad reference to the Sixth Amendment.  The military judge briefly addressed Article 10 on his own motion, not because it was raised or litigated by the defense.  In that context, the military judge did not articulate detailed findings for Article 10, which had not been raised or litigated by the defense. Instead, the military judge focused narrowly on the question of whether there had been any prejudice to the defense from the length of time it took to bring him to trial, without making the type of specific findings on the nature of restraint and processing of the case that normally would have accompanied a litigated Article 10 motion.  The ruling reflects the actions of a military judge who sought to address briefly a potential

17

issue, not the actions of a military judge presiding over a litigated Article 10 motion. We note that although Appellant does not concede that the Article 10 issue was waived, he asserts trial defense counsel were ineffective in that they did not "focus" the motion to dismiss on Article 10. Because the defense did not make the requisite Article 10 motion at trial, any issue with respect to Article 10 was waived. See Mizgala 61 M.J. at 127; see also United States v. Sloan, 22 C.M.A. 587, 590, 48 C.M.R. 211, 214 (1974) (concluding that failure to raise the issue at trial waives the Article 10 right). We shall consider Article 10 only to the extent that it bears upon the granted issues concerning ineffective assistance of counsel and the providence of Appellant's plea. See infra Parts III and IV.

## III. ASSISTANCE OF COUNSEL

Appellant claims that his trial defense team was deficient in the following respects: (1) failure to challenge the disposition of the initial charges filed on September 6, 2001; (2) failure to advise him that an unconditional guilty plea would waive appellate consideration of his R.C.M. 707 speedy trial claim, and of the possibility of entering a conditional guilty plea to preserve the issue; and (3) failure to focus the speedy trial claim on Article 10. The Government disputes factual and legal aspects of Appellant's claims.

United States v. Tippit, No. 06-0914/AF

## A.   STANDARD OF REVIEW

Members of the armed forces are entitled to the effective assistance of counsel.  United States v. Scott, 24 M.J. 186, 187-88 (C.M.A. 1987); see U.S. Const. amend. VI; Article 27(b), UCMJ, 10 U.S.C. § 827(b) (2000).  We review claims of ineffective assistance of counsel de novo.  United States v. Perez, 64 M.J. 239, 243 (C.A.A.F. 2006).

An appellant who alleges ineffective assistance of counsel "must surmount a very high hurdle."  Id. (citations and quotation marks omitted).  As the Supreme Court has emphasized, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland v. Washington, 466 U.S. 668, 689 (1984).

To overcome the presumption of competence, an appellant must demonstrate:  (1) "a deficiency in counsel's performance that is 'so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment'"; and (2) that the deficient performance prejudiced the defense through errors "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  United States v. Moulton, 47 M.J. 227, 229 (C.A.A.F. 1997) (quoting Strickland, 466 U.S. at 687 ).  To satisfy the prejudice prong of Strickland in a guilty plea case, the defense must also "show

19

specifically that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" United States v. Alves, 53 M.J. 286, 289 (C.A.A.F. 2000) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

When challenging the performance of counsel, the defense bears the burden of establishing the truth of the factual allegations that would provide the basis for finding deficient performance. See United States v. Polk, 32 M.J. 150, 153 (C.M.A. 1991). When there is a factual dispute, we determine whether further factfinding is required under United States v. Ginn, 47 M.J. 236 (C.A.A.F. 1997). If, however, the facts alleged by the defense would not result in relief under the high standard set by Strickland, we may address the claim without the necessity of resolving the factual dispute. See id. at 248. Likewise, "we need not determine whether any of the alleged errors [in counsel's performance] establish[] constitutional deficiencies under the first prong of Strickland . . . [if] any such errors would not have been prejudicial under the high hurdle established by the second prong of Strickland." United States v. Saintaude, 61 M.J. 175, 183 (C.A.A.F. 2005).

B.  ANALYSIS OF APPELLANT'S CLAIMS

1.  Disposition of the September 6, 2001, charges

Appellant contends that his counsel were ineffective by focusing on the September 10, 2001 charges instead of the September 6, 2001 charges as the basis for the speedy trial motion.  At trial, the defense counsel expressly stated that he was not arguing for the clock to start on September 6, 2001, but instead asked the military judge to focus on the September 10, 2001 charges.  According to Appellant, had counsel focused on the September 6, 2001 charges, he would have prevailed at trial.  Appellant's theory is that the September 6 charges had never been dismissed, which meant that the speedy trial clock had not stopped prior to arraignment, and that the 120-day speedy trial standard in R.C.M. 707 had been violated.  The record, in the context of addressing the later charges preferred on September 10, 2001, contains various references by the parties to the fact that charges were preferred initially on September 6 and "withdrawn" on September 10 a result of "an administrative error."  The record, however, contains little information about the content or disposition of the September 6 charges.

There is a high hurdle that must be surmounted to prove an ineffective assistance claim and here Appellant has not met his initial burden of establishing a factual record that would permit us to ascertain the basis for his claim:  the actual

content of the September 6, 2001, charges, whether the document containing those charges constituted a legally sufficient preferral, see R.C.M. 307, and the official nature of any subsequent action on those charges are all undocumented. See, e.g., R.C.M. 401. There is no September 6, 2001 charge sheet in the record and there is no record of any official action with respect to that charge sheet. Appellant has not asserted that the Government has been unwilling or unable to produce the records. Likewise, Appellant has not asserted that he has been unable to obtain affidavits from any of the participants in the charging and disposition process as to the content or action on those charges. In essence, Appellant asks us to speculate not only as to the facts that would establish the validity of the September 6, 2001, preferral for purposes of starting the speedy trial clock, but also as to the facts that would establish the invalidity of any subsequent disposition of those charges so that we reach the conclusion that the speedy trial clock ran continuously from September 6, 2001. Juxtaposed against the presumption of effective assistance of counsel required by Strickland, we decline Appellant's invitation to find his trial defense counsel ineffective for failing to challenge the disposition of the September 6, 2001 charges when Appellant has failed to provide an appellate record that documents the disposition of the charges. See Moulton, 47 M.J. at 229.

22

2.    The convening authority's action on the September 10, 2001, and October 10, 2001, charges

Appellant contends that his counsel were deficient because they failed to tell him that his unconditional guilty plea would waive appellate review of the speedy trial motion.  Appellant's civilian and military trial defense counsel have submitted affidavits asserting that they provided appropriate advice, and their affidavits dispute Appellant's account of the nature of the advice that they provided.  According to Appellant, had he been advised properly, he would have pled guilty only if the convening authority had agreed to a conditional guilty plea that preserved the speedy trial issue for appeal.

Even if we assume both that Appellant's factual assertions are valid and that failure to provide such advice was deficient under the first prong of Strickland, Appellant must demonstrate that he would prevail on his R.C.M. 707 speedy trial issue on appeal in order to establish prejudice under the second prong of Strickland.  See Perez, 64 M.J. at 243.  For the following reasons, we conclude that the military judge did not err and that Appellant would not have prevailed on appeal even if the issue had not been waived.

The charges that started the speedy trial clock under R.C.M. 707 were preferred against Appellant on September 10, 2001.  On November 2, 2001, well within the R.C.M. 707 120-day

period, the SJA provided the Special Court-Martial Convening Authority with a recommendation that included an "Options" section that accurately set forth the convening authority's disposition choices under R.C.M. 404:

(1) "Dismiss the charges";

(2) "Forward the charges to a subordinate commander for disposition";

(3) "Refer charges to a summary or special court-martial"; or

(4) "Forward the Article 32 report with the charges, to the superior commander, 14 AF/CC, for disposition."

Here, the option to "Dismiss the charges" is critical for purposes of the speedy trial motion. If the convening authority chose the option to dismiss the charges, that stopped the speedy trial clock under R.C.M. 707(b)(3). On the other hand, if the convening authority did not choose "Dismiss the charges," more than 350 accountable days passed from preferral on September 10, 2001, to arraignment on November 20, 2002, a violation of Appellant's right to be brought to trial within 120 days under R.C.M. 707.

At trial, and on appeal, Appellant contends that the convening authority did not dismiss the charges, citing the SJA's recommendation that the convening authority "withdraw" the charges and the convening authority's one word action --

24

"concur." Appellant's argument also focuses on the SJA's repeated use of the words "withdraw," "withdrawal," and "withdrawing" in his memorandum to the convening authority and on the charge sheet following the convening authority's decision. Appellant contends that the term "withdraw" should be given the meaning it has in R.C.M. 604, which permits charges that have been referred to a court-martial to be "withdrawn" and referred to another court-martial, subject to limited exceptions. As Appellant notes, the act of withdrawing a referred charge from a court-martial under R.C.M. 604 does not produce dismissal of the charges. United States v. Britton, 26 M.J. 24, 26 (C.M.A. 1988). Compare R.C.M. 604(a) (charges may be withdrawn only after they have been referred to trial), with R.C.M. 404(a) (preferred charges may be dismissed).

In Britton, charges that had been referred to trial were withdrawn by the convening authority and referred to another court-martial, with no evidence of an intent by the convening authority to dismiss the charges. Britton, 26 M.J. at 26. The present case is distinguishable from Britton on several grounds. First, the parties in the present case agree that the charges had not been referred to a court-martial at the time of the convening authority's action, and that the convening authority could not "withdraw" the charges from a court-martial as a matter of law under R.C.M. 604. Second, the SJA's memorandum

contains no suggestion that the charges had already been referred to a court-martial; on the contrary, the memorandum lists referral as an option for the convening authority. There is nothing in the memorandum that suggests the convening authority had the option of removing charges from an existing court-martial. Third, the SJA did not list withdrawal under R.C.M. 604 as an option, nor did the SJA otherwise refer to R.C.M. 604 in his memorandum, so there is no basis for concluding that the SJA sought to use the term "withdrawal" as it is used in R.C.M. 604 with respect to charges that have been referred to court-martial. Fourth, the Rules for Courts-Martial do not treat "withdrawal" as a defined term. In the operative language of the rules, the terms "withdraw" and "withdrawn" are expressly placed in the context of charges referred to a court-martial in the introductory sentence of R.C.M. 604(a) ("withdrawn from a court-martial") and R.C.M. 604(b) ("withdrawn from a court-martial"). The SJA did not refer to R.C.M. 604 or otherwise suggest that "withdraw" meant removing a referred charge from a court-martial. Fifth, the SJA advised the convening authority that "[w]ithdrawing the charges now will not prohibit re-preferral at a later time . . . ." We note that when charges are withdrawn under R.C.M. 604 they remain in effect, which would have rendered the SJA's discussion of "re-preferral" –– an action that is required after charges are

26

dismissed -- superfluous and inapplicable.  We also observe that as a matter of common usage, the definition of the term "withdraw" specifically includes "to abandon the prosecution of."  See Webster's Third New International Dictionary Unabridged 2626 (1986).  In that context, one can reasonably infer that the SJA intended to use "withdraw" in its colloquial sense of abandoning prosecution and thus was indicating the option of dismissal.  Finally, we note the numerous actions taken by the prosecution and defense in the aftermath of the convening authority's action, as described by the military judge and summarized in Part I.C., supra, all of which were consistent with dismissal of the charges.

In light of the foregoing, this is not a case like Britton where the convening authority had the option of either dismissal or withdrawal and we are required to ascertain from the documents which of two valid options were chosen.  In such a case, use of the term "withdraw" would be problematic.  Here, however, we have an SJA providing the convening authority with only one such option -- dismiss -- and using common language which has the same colloquial meaning as dismissal.  Although we do not recommend use of the word "withdrawal" to implement a dismissal of charges, the SJA's accurate presentation of dismissal as an option in the present case and the convening authority's decision to concur are sufficient, in the

circumstances of this case, to dismiss the charges on November 6, 2001 and stop the R.C.M. 707 speedy trial clock.

3. Propriety of the convening authority's disposition of the 2001 charges

"[O]nce charges are dismissed, absent a subterfuge, the speedy-trial clock is restarted." United States v. Anderson, 50 M.J. 447, 448 (C.A.A.F. 1999). Here, Appellant contends that even if the convening authority dismissed the September 10, 2001 charges on November 6, 2001, there was no "satisfactory reason to dismiss the charges." In the SJA's November 2, 2001 memorandum to the convening authority, the SJA offered the following in support of dismissing the charges: "[i]nformation has come to the attention of the AFOSI through very reliable sources that significant weapons related offenses -- a joint federal law enforcement investigation is ongoing -- involving the subject and gun dealers." He added that this information put the charged offenses "into proper context" and that the charges could be re-preferred "at a later time -- in approx[imately] three months as this investigation is completed." Appellant contends that the SJA's recommendation on disposition was not legitimate because the AFOSI and civilian law enforcement agencies were not engaged in a "joint investigation."

The military judge, in his findings of fact, found that "a formal joint federal investigation did not exist between the AFOSI and either the FBI [Federal Bureau of Investigation] or the ATF [Bureau of Alcohol, Tobacco, and Firearms] with regard to this case . . . ." The military judge also found that "all three agencies were sharing information with each other concerning investigations that were being conducted by each agency which were somewhat interrelated with each other." On appeal, we accept the military judge's findings of fact unless they are clearly erroneous. Mizgala, 61 M.J. at 127. Appellant has not challenged the military judge's finding that the three agencies were conducting "interrelated" investigations and sharing information with each other. Appellant also has not claimed that the SJA deliberately misled the convening authority, and it is not apparent whether the SJA had been misinformed about the specific relationship among the various agencies, or whether he was simply imprecise when he referred to a "joint investigation."

Nonetheless, the import of his communication to the convening authority was that multiple federal agencies were continuing investigative efforts with respect to Appellant's activities. Appellant has not demonstrated why it would make any difference, for purposes of dismissing charges, whether the action was based upon the existence of a "joint" investigation

or several parallel investigations.  In the circumstances of the present case, the existence of parallel investigations and the decision to await their completion to fully ascertain the number and nature of offenses constituted a legitimate reason for dismissing the charges with a view towards later re-preferral. See R.C.M. 401(c)(1) Discussion ("It is appropriate to dismiss a charge and prefer another charge anew when, for example, the original . . . did not adequately reflect the nature or seriousness of the offense."); cf. United States v. Cossio, 64 M.J. 254, 257 (C.A.A.F. 2007) (finding it not unreasonable under Article 10 for the government to wait for a forensic examination of evidence before proceeding to trial).

Appellant also contends that the convening authority's November 2001 disposition was deficient because the "real reason" for disposition of the charges in November 2001 "was because the government had not secured the proper approval necessary to ask for confinement for a reservist," as reflected in a contemporaneous AFOSI memorandum.  The AFOSI memorandum at issue involved a request for analysis of Appellant's computer and it contained the following comment:  "Due to a legal mistake, SUBJECT was brought onto active duty under the wrong orders and now his status must be approved by SECAF.  The legal office must now drop all charges and refile (the original Article 32 already has been completed)."  The military judge,

30

however, did not adopt the defense's view that this comment, rather than the explanation in the SJA's recommendation, was the reason for the dismissal. The military judge noted that the agent who drafted the AFOSI memorandum could not "recall how, or from whom, he received the information" about the charges. Accordingly, the military judge focused solely on the ongoing investigation as the basis for the convening authority's disposition of the charges, and concluded that it was a valid basis for the dismissal in November 2001.

The defense has not established that the military judge erred in his findings of fact. At trial, the AFOSI agent made it clear that he could not recall the basis for his comments in the memorandum regarding dismissal of the charges. The defense did not introduce further evidence from persons who had direct knowledge of the disposition, such as the SJA or the convening authority. In that posture, the military judge had a sufficient basis for determining that the comment about Secretarial approval in the AFOSI memorandum, without more, did not support a finding that the command had, in fact, made the disposition decision for that reason. On appeal, the defense has not provided any new information, in the form of affidavits from the SJA, convening authority, or otherwise, that would lead us to conclude that the military judge erred in his findings of fact,

31

or that trial defense counsel erred by not calling either the SJA or the convening authority as witnesses.

Even if the desire to obtain Secretarial approval was a matter considered by the SJA or the convening authority in November 2001, that would not establish that the command took such action as a subterfuge to evade the R.C.M. 707 speedy trial clock.  Appellant has not set forth legal authority for the proposition implicit in his argument -- that the convening authority found it necessary to dismiss the charges in November 2001 because of a defect in Appellant's orders.  Assuming that Secretarial approval of the orders was required as a result of Appellant's status as a reservist in order to preserve the potential for a sentence to confinement, see Article 2(d)(5)(A), UCMJ, 10 U.S.C. § 802(d)(5)(A) (2000), the law does not require dismissal of the charges as a predicate for obtaining such orders.  Moreover, Secretarial approval is not required under Article 2 for the preferral of charges.  Most significantly, the defense has not demonstrated that the charges were dismissed on November 6, 2001, for the purpose of providing a sufficient opportunity to obtain Secretarial approval prior to expiration of the 120-day speedy trial clock.  At that point, less than sixty days had expired and the defense has not shown that anyone in authority had determined that the remaining period on the clock was insufficient to obtain Secretarial approval.

Under the foregoing circumstances, Appellant has not established that the "real reason" the convening authority disposed of the charges in November 2001 was the failure to obtain Secretarial approval. Moreover, the defense has not demonstrated that the dismissal was a subterfuge designed to defeat the 120-day speedy trial clock. Accordingly, irrespective of whether counsel advised Appellant that his unconditional guilty plea waived further review of his R.C.M. 707 motion, his ineffective assistance of counsel claim fails under the second prong of Strickland. There is no prejudice to Appellant because he has not established that he would have prevailed on appeal.

4.   Article 10

Appellant contends that trial defense counsel were ineffective because they did not focus on the Article 10 issue at trial. Article 10 requires the government to act with reasonable diligence to bring charges to trial when an accused is under arrest or confinement, or under certain forms of restriction. See supra Part I.E.1. At trial and on appeal, the defense has not identified a period of arrest or confinement that would require the application of Article 10 to this case, nor has the defense demonstrated that the nature of any restriction in this case would have triggered Article 10. We note, however, that during sentencing, the military judge

awarded credit for the forty-seven days in 2001 that Appellant was restricted to the base and county prior to preferral of the charges. For purposes of addressing the ineffective assistance claim, we shall assume without deciding that the forty-seven-day restriction is sufficient to trigger the application of Article 10.

Because the protections of Article 10 are broader than R.C.M. 707, our resolution of Appellant's claim under R.C.M. 707 in Part III.B.2., supra, does not necessarily resolve the claim under Article 10. See United States v. Kossman, 38 M.J. 258, 261 (C.M.A. 1993). The test under Article 10 is whether the government has acted with reasonable diligence. Id. at 262. We take into account the four factors applicable to litigation of speedy trial claims under the Sixth Amendment: "(1) length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." Mizgala, 61 M.J. at 129 (citing Barker, 407 U.S. at 530).

Appellant, however, has not identified specific factors in the present case that would enable him to prevail under Article 10 even if unsuccessful under R.C.M. 707. Rather, Appellant relies primarily on his R.C.M. 707 argument that the convening authority did not properly dismiss the charges in November 2001 to argue that there was a lack of reasonable diligence in terms

of the length of delay and the reasons for the delay.  As discussed in Part III.B.2., supra, we have concluded that the convening authority dismissed the charges in November 2001 and had a legitimate reason for doing so.  In light of the command's decision to dismiss the charges and defer any action until the outcome of the ongoing investigation was known, Appellant has not demonstrated that the Government failed to proceed with reasonable diligence, either with respect to the length of the delay or with respect to the reasons for the delay.  In that posture, he has not established that he would prevail on appeal had his counsel pursued a different strategy at trial by making the motion under Article 10, in addition to R.C.M. 707, and Appellant's ineffective assistance counsel claim fails under the second prong of Strickland.

## IV.  PROVIDENCY OF PLEA

Appellant contends that his plea was improvident because it was based on the mistaken belief that his R.C.M. 707 speedy trial issue would be preserved for appeal.  The "decision to accept a guilty plea is reviewed for an abuse of discretion." United States v. Eberle, 44 M.J. 374, 375 (C.A.A.F. 1996) (citation omitted).  "An appellant who challenges the providency of a guilty plea must demonstrate 'a substantial basis in law and fact for questioning the guilty plea.'"  United States v.

35

Pena, 64 M.J. 259, 267 (C.A.A.F. 2007) (quoting United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991)).

Appellant argues that several factors render his plea improvident:  (1) his trial defense counsel did not tell him his plea would waive appellate review of the R.C.M. 707 speedy trial issue; (2) the military judge "apparently expected the issue to be reviewed on appeal" because in his ruling on the speedy trial motion he mentioned "' [i]n the event it's later determined that my findings as to when the speedy trial clock started was erroneous'"; and (3) the military judge did not explain that his plea waived the speedy trial issue.  These factors do not render his plea improvident.

We have addressed the first factor in our previous discussion and resolution of his ineffective assistance of counsel claim.  See supra Parts III.B.2., III.B.3.  As to the second, the fact that the military judge provided alternative theories for consideration on appeal reflects the reasonable actions of a military judge at trial, not any lack of merit to the military judge's rulings nor any considered decision by him that an unconditional guilty plea would not waive the R.C.M. 707 issue in Appellant's case.  Finally, the military judge does not have an affirmative duty under R.C.M. 910 to instruct an accused that an unconditional guilty plea waives further review of an R.C.M. 707 speedy trial claim.  For these reasons, we find that

Appellant has failed to demonstrate that his plea was improvident.


## V.  DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Tippit, No. 06-0914/AF

RYAN, Judge (dissenting in part, concurring in part, and concurring in the result):

For the reasons set forth in Judge Erdmann's separate opinion, I respectfully dissent from the portion of the majority opinion that holds that the convening authority in this case "dismissed" charges it expressly stated were "withdrawn." However, I nonetheless concur in the result.

First, I agree with the majority's conclusion that, pursuant to Rule for Courts-Martial (R.C.M.) 707(e), Appellant, by pleading guilty, waived any claim under R.C.M. 707.

Second, I agree with the majority's conclusion that any speedy trial claim under Article 10, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 810 (2000), was waived.  See also United States v. Mizgala, 61 M.J. 122, 127 (C.A.A.F. 2005) (requiring a defendant to litigate an Article 10, UCMJ, claim prior to pleading guilty to avoid waiver).

Finally, I agree with the majority that Appellant's counsel was not ineffective for failing to litigate Article 10, UCMJ, at trial.  However, as I agree with Judge Erdmann that the "withdrawal" of charges was a nullity, I would also address the granted issue -- whether Appellant's counsel was ineffective because he did not inform Appellant that a guilty plea waived appeal under R.C.M. 707.

I would resolve Appellant's ineffectiveness claim by addressing prejudice.  See United States v. Perez, 64 M.J. 239, 243 (C.A.A.F. 2006).  In order to prevail on an ineffectiveness

claim an appellant must show that there is a reasonable probability that "absent [counsel's] error, there would have been a different result." United States v. Davis, 60 M.J. 469, 474 (C.A.A.F. 2005) (citation omitted). In this case, only dismissal with prejudice would have yielded a different result. To warrant dismissal with prejudice under R.C.M. 707 a defendant must satisfy, among other things, the Barker test. See R.C.M. 707(d)(1); Barker v. Wingo, 407 U.S. 514, 530-33 (1972).

Appellant has not shown the requisite prejudice to meet this high standard. During much of the delay period Appellant was released from active duty and at home. He has not shown an improper Government purpose for the delay. Nor has he proffered evidence of either oppressive pretrial incarceration or evidence that his "preparation for trial, defense evidence, trial strategy, or ability to present witnesses" were adversely impacted by the delay in this case. Mizgala, 61 M.J. at 129 (addressing the Barker factors). Because there was no material prejudice to Appellant's substantial rights under the facts of this case, I concur in the result.

<u>United States v. Tippit</u>, No. 06-0914/AF

ERDMANN, Judge (dissenting):

Because the convening authority's November 6, 2001, action did not dismiss the charges or stop the speedy trial clock, I respectfully dissent.

The Uniform Code of Military Justice and the <u>Manual for Courts-Martial</u> (<u>MCM</u>) establish a unique system of justice. As a result, actions taken in the military justice system often have unique meanings and effects. "Dismissal" and "withdrawal" are terms of art, with distinct meanings under the Rules for Courts-Martial (R.C.M.). A commander may "dismiss" charges and thereby extinguish them. R.C.M. 401(c)(1). "Withdrawal", on the other hand, can occur only after charges have been referred to a court-martial. R.C.M. 604(a). Withdrawal does not, however, extinguish the charges. The Government should be bound by the actual meaning of the terms it employs and I am not persuaded by subsequent arguments that we should construe those terms to mean something distinctly different and contrary to their ordinary meanings in the military justice system.

The staff judge advocate's November 2, 2001, memorandum to the convening authority specifically recommended in three separate sentences that the charges be "withdrawn." The convening authority specifically "concur[red]" with that recommendation. In addition, the initial charge sheet reflects that the charges were "withdrawn." Because none of these

charges had been referred for trial by courts-martial, withdrawal was not possible. The purported withdrawal was a legal and factual nullity.

There is no evidence or manifestation of the convening authority's intent supporting any conclusion that these charges were dismissed. This court should not rewrite the procedural history of this case to come to that conclusion. The UCMJ and MCM establish rules and procedures as determined by the Congress and President, respectively. To the extent that those rules and our decisions demand procedural compliance from the defense, so too should we demand adherence to the rules by the Government. Withdrawal of these unreferred charges was a nullity that this court should not convert into a legal dismissal of the charges.

Turning to the speedy trial issue, I agree with the majority that Tippit's unconditional guilty pleas waived the Sixth Amendment and R.C.M. 707 speedy trial issues. However, in the context of this case and as framed by the parties at trial, I conclude that the issue of Tippit's right to a speedy trial under Article 10, UCMJ, 10 U.S.C. § 810 (2000), was preserved for appellate review. See United States v. Mizgala, 61 M.J. 122, 127 (C.A.A.F. 2005). Although the defense's written speedy trial motion did not specifically rely upon Article 10, UCMJ, the Government obviously recognized the applicability of this fundamental right and argued in its written response that

2

Article 10, UCMJ, had not been violated.  In turn, the military judge recognized that the issue had been placed before him.  He considered and ruled upon Tippit's right to a speedy trial under Article 10, UCMJ, and found that the Government had proceeded with reasonable diligence.  Tippit subsequently appealed the Article 10, UCMJ, speedy trial issue to the Court of Criminal Appeals, which reviewed the Article 10, UCMJ, issue and affirmed the military judge's determination.  In my view this constitutes litigation of the Article 10, UCMJ, speedy trial issue at trial and preserves the matter for appellate review.  Mizgala, 61 M.J. at 127.  Just as the Court of Criminal Appeals did, I would proceed to review Tippit's Article 10, UCMJ, claim.

Because the charges were never dismissed, the Government's accountability for speedy trial commenced on September 10, 2001, and October 10, 2001, when the charges in this case were preferred.  That accountability continued uninterrupted up to the time of Tippit's trial —- an excessive delay of over one year.  "[The] framework to determine whether the Government proceeded with reasonable diligence includes balancing the following four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant."  Mizgala, 61 M.J. at 129 (citing Barker v. Wingo, 407 U.S. 514,

530 (1972); United States v. Birge, 52 M.J. 209, 212 (C.A.A.F. 1999)).

Although there may have been some complexity involved in the forensic investigation of this case, I conclude that this delay was unjustified and well beyond that which can be considered reasonably necessary. Tippit demanded a speedy trial on August 20, 2001. During this period of delay, Tippit was restricted on June 15, 2001, released from active duty on November 6, 2001, recalled to active duty on June 5, 2002, and reported for duty two days later. Trial did not commence until November 21, 2002. This extended process strained Tippit's family relationships, disrupted his civilian affairs, and placed added burdens upon his wife. The fact that Tippit was misadvised that the charges were dismissed, the uncertainty he experienced in his civilian life, and the disruption in his personal life constitute unusual anxiety that I find prejudicial. See id. (citing Barker, 407 U.S. at 532).

I would conclude that the Government failed to act with due diligence to bring Tippit to trial and that Tippit was prejudiced by the delay in violation of Article 10, UCMJ. Therefore, I would set aside the decision of the Court of Criminal Appeals, set aside the findings and sentence, and dismiss the charges with prejudice. United States v. Kossman, 38 M.J. 258, 262 (C.M.A. 1993). Accordingly, I would not reach

the ineffective assistance of counsel claim or the providence of

Tippit's guilty pleas.