# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist ERICK A. NAVARRO**
**United States Army, Appellant**

ARMY 20160673

Headquarters, III Corps and Fort Hood
G. Bret Batdorff and Douglas K. Watkins, Military Judges
Colonel Susan K. Arnold, Staff Judge Advocate

For Appellant: Captain Benjamin J. Wetherell, JA; Terri R. Zimmermann, Esq.; Jack B. Zimmerman, Esq. (on briefs).

For Appellee: Lieutenant Colonel Eric K. Stafford, JA; Captain Jeremy Watford, JA (on brief).

18 January 2019

--------------------------------
SUMMARY DISPOSITION
--------------------------------

FLEMING, Judge:

In this case, we hold appellant's defense counsel were not ineffective in that they made reasonable tactical decisions at trial.

An officer panel sitting as a general court-martial convicted appellant, contrary to his plea, of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [hereinafter UCMJ]. The panel sentenced appellant to a dishonorable discharge, confinement for three years, total forfeiture of all pay and allowances, and reduction to Private (E-1). The convening authority approved the dishonorable discharge, confinement for three years, and

reduction to Private (E-1).[1] Appellant's case is now pending review before this court pursuant to Article 66, UMCJ. Appellant asserts four assigned errors; one merits discussion, and none merit relief.

## BACKGROUND

Appellant sexually assaulted Private First Class (PFC) TMK by penetrating her anus with his penis while she was incapable of consenting to the sexual act and by causing bodily harm to her.[2] Appellant and PFC TMK presented very different versions of the events surrounding the offense.

Appellant told Criminal Investigation Command (CID) Special Agent (SA) MA that PFC TMK and appellant engaged in consensual vaginal intercourse at approximately 1400 hours in the afternoon while alone in a hotel room. Prior to the sexual act, appellant said he twice asked PFC TMK if she wanted to engage in sexual intercourse to which she affirmatively responded. Appellant denied engaging in any anal intercourse with PFC TMK. After the sexual intercourse, appellant and PFC TMK met three other service members at a nearby movie theater. After the movie, PFC TMK purchased alcohol for the group and the group returned to the hotel room. Private First Class TMK, appellant, and two of the other three service members started drinking alcohol.[3] Appellant admitted PFC TMK became intoxicated from her alcohol consumption. Appellant denied engaging in any sexual intercourse with PFC TMK that evening or into the next morning while she was intoxicated.

Private First Class TMK testified she did not engage in any sexual intercourse with appellant at approximately 1400 hours in the afternoon in the hotel room. She stated appellant did not ask her whether she wanted to engage in sexual intercourse. Private First Class TMK testified she was alone in the hotel room with appellant for approximately an hour in the afternoon and they merely talked. After this

---

[1] The convening authority deferred and then waived the adjudged and automatic forfeitures, with the direction that these funds be paid to appellant's wife.

[2] The two separate *actus rei* of appellant penetrating PFC TMK while she was incapable of consent and by bodily harm were originally charged as two separate specifications, which were later merged by the military judge into one specification.

[3] Private First Class TMK drank the majority of alcohol in a Bailey's liquor bottle. She started slurring her words, stumbling around the hotel room, and was heavily intoxicated. Two eyewitnesses testified on a sliding scale of one being the lowest and ten being the highest that PFC TMK's level of alcohol intoxication was a seven or eight.

conversation, appellant, PFC TMK, and three other service members met at the movie theater. After the movie and purchasing alcohol, the group returned to the hotel room. Private First Class TMK recalled drinking one glass of hard liquor. After this drink, PFC TMK remembers watching TV in bed and her next memory was awakening to appellant penetrating her anus. She told appellant to stop but he continued. Private First Class TMK testified she awoke the next morning, confronted appellant regarding the situation, and appellant denied that any sexual activity occurred. Private First Class TMK described having anal pain and discharge.

After departing the hotel room, PFC TMK sought medical treatment from a Sexual Assault Nurse Examiner (SANE). The SANE observed tears in PFC TMK's anus and dried secretions on her buttocks. The SANE took swabs from PFC TMK's rectal area for DNA testing, which later confirmed the presence of appellant's DNA. Private First Class TMK advised the SANE that she had experienced an approximate twelve hour amnesic period from after her first drink into the next morning. Private First Class TMK reported to the SANE that she had several medication prescriptions but an administered drug-screening test produced a negative result as to her use of any prescription drugs.

We now pause to note this is not the usual case involving a single sexual act between an accused and a victim and the need to determine what occurred within that specific event. This case involves a more novel requirement to determine which sexual act occurred between the two proffered versions – appellant's assertion of consensual vaginal intercourse in the afternoon versus PFC TMK's assertion of nonconsensual anal intercourse in the evening. This case entirely turns on whether appellant or PFC TMK deliberately lied.

Appellant now asserts his trial defense counsel were ineffective for failing to: (1) present testimony from an expert witness regarding "the effects the medications can have on a person's perception and memory or the definition and effects of an amnesic period"; (2) cross-examine PFC TMK about the effects of her medications; (3) cross-examine PFC TMK about possible inconsistent statements she made regarding her medication usage; (4) cross-examine the SANE regarding the effects of PFC TMK's medication or about her amnesic period; and (5) present witnesses regarding appellant's character for truthfulness or peacefulness during the merits.[4]

---

[4] Appellant also asserts his counsel were ineffective because they did not challenge for cause several panel members on implied bias grounds or object to alleged Military Rule of Evidence [Mil. R. Evid] 404(b) evidence that appellant "failed out of AIT [Advanced Individual Training]." Having found appellant's alleged error that the military judge abused his discretion by failing to sua sponte excuse panel

(continued . . .)

**LAW AND DISCUSSION**

The Sixth Amendment guarantees an accused the right to the effective assistance of counsel. *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011) (citing *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001)). To establish that his counsel was ineffective, appellant must satisfy the two-part test, "both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). We review both prongs of the *Strickland* test de novo. *United States v. Mazza,* 67 M.J. 470, 474 (C.A.A.F. 2009) (citations omitted). "As the Supreme Court has emphasized, a reviewing court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (quoting *Strickland*, 466 U.S. at 689). "We also are constrained by the principle that strategic choices made by trial defense counsel are 'virtually unchallengeable' after thorough investigation of the law and the facts relevant to the plausible options." *United States v. Akbar*, 74 M.J. 364, 371 (C.A.A.F. 2015) (quoting *Strickland*, 466 U.S. at 690-91).

After reviewing the entire record of trial and the sworn affidavits submitted by appellant's trial defense counsel, we find counsel's conduct in pursuing a trial strategy consistent with appellant's sworn statement to CID and the physical evidence squarely fits within the wide range of reasonable professional assistance.

Appellant's trial defense counsel's sworn affidavits outline their trial strategy in explicit detail. As stated by counsel, the defense theory was to establish the "sexual intercourse only occurred during the day in the hotel room and not at night

---

(. . . continued)

members on implied bias grounds unworthy of discussion and meritless, we likewise find the defense counsel were not ineffective for failing to challenge such members. As to Mil. R. Evid. 404(b), as stated in the government's appellate brief, "[a]ppellant's departure from AIT was only mentioned a few times early in the trial [as contextual information] and government counsel never followed up with questions exploring why appellant failed or otherwise tying the failure to appellant's character or credibility." We are unconvinced a limited reference to "failing out of AIT," without any information as to the reason or a negative linkage to appellant's character or credibility, is Mil. R. Evid. 404(b) evidence. Even if such reference is objectionable under Mil R. Evid. 404(b), appellant fails to show his counsel were ineffective for failing to object to such limited evidence or, if ineffective, that a "reasonable probability" the result of the proceeding would have been different because of such error.

after drinking; consistent with the statement provided by [appellant] to CID." The defense "theory was not centered on misperception or lack of memory of PFC TMK" and their "strategy was to show that PFC TMK lied regarding the consensual sexual encounter, not that she innocently misperceived events due to taking medications alone or mixed with alcohol." Any direct testimony from an expert witness or cross-examination of PFC TMK or the SANE regarding prescription medication usage or an amnesic period in the evening was not probative to support defense's theory that PFC TMK deliberately lied regarding her consensual engagement in sexual intercourse with appellant in the afternoon.

Beyond solely linking the defense theory to appellant's CID statement, defense counsel adeptly reasoned a "faulty memory" defense could not aid in undermining the government's highly probative physical evidence that tears existed in PFC TMK's anus and that appellant's DNA was found on PFC TMK's rectal swabs. Likewise, presenting a "faulty memory" defense was undermined because PFC TMK's drug-screening test was negative for prescription drug usage. Defense counsel believed the stronger strategy was to demonstrate PFC TMK was lying and "it was inconsistent to argue to the panel that PFC TMK was deliberately lying and that she also did not remember events from that evening correctly."

As to the alleged failure to present witnesses to testify to appellant's character for truthfulness and peacefulness, neither appellant nor any alleged witness provided a sworn affidavit or unsworn statement regarding their potential testimony. All that exists to support appellant's claim is a mere appellate exhibit – a defense generated pretrial witness list. Appellant does not allege that his counsel failed to investigate or interview witnesses but instead proffers they committed tactical error by not calling certain witnesses. Even if such favorable witnesses existed, appellant admitted to engaging in sexual intercourse with PFC TMK, but he denied having anal intercourse with PFC TMK, despite tears in her anus and his DNA on her rectal swabs. This physical evidence directly contradicted his truthful and peaceful character. In light of this probative physical evidence against appellant's character, the defense faced the danger of opening the door to the government presenting unfavorable character evidence against appellant in rebuttal. The more reasonable tactical strategy pursued by defense counsel was to challenge PFC TMK's character for truthfulness by presenting testimony from PFC TMK's AIT roommate Specialist GC that PFC TMK was not a truthful person.

While finding appellant's trial defense counsel's performance did not fall below an objective standard of reasonableness, several reasons convince us that even if counsel's performance was deficient, it did not give rise to a "reasonable probability" the result of the proceeding would have been different. "[W]e need not determine whether any of the alleged errors [in counsel's performance] establish[] constitutional deficiencies under the first prong of *Strickland* . . . [if] any such errors would not have been prejudicial under the high hurdle established by the second

prong of *Strickland*." *Tippit*, 65 M.J. at 76 (quoting *United States v. Saintaude*, 61 M.J. 175, 183 (C.A.A.F. 2005)) (alterations in original). Specifically, we find there was no reasonable probability that, absent the alleged error(s), the result would have been different. *See United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012).

## CONCLUSION

On consideration of the entire record, we hold the finding of guilty and the sentence as approved by the convening authority correct in law and fact. Accordingly, the finding of guilty and the sentence are AFFIRMED.

Senior Judge BURTON and Judge HAGLER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court