UNITED STATES, Appellee

v.

Terry S. FITTEN, Mess Management Specialist Third Class, U.S. Navy, Appellant.

Nos. 94–0204.
CMR 92 0815.

U.S. Court of Appeals for the Armed Forces.

Argued Feb. 14, 1995.

Decided June 12, 1995.

Certiorari Denied Oct. 10, 1995.

See 116 S.Ct. 308.

For Appellant: *Lieutenant Commander Howard B. Goodman,* JAGC, USN (argued); *Lieutenant James A. Douglas,* JAGC, USNR (on brief).

For Appellee: *Lieutenant Andrew J. Waghorn,* JAGC, USNR (argued); *Colonel J. Composto,* USMC, *Commander S.A. Stallings,* JAGC, USN, and *Lieutenant J.M. Kegelmeyer,* JAGC, USNR (on brief); *Colonel T.G. Hess,* USMC.

*Opinion of the Court*

CRAWFORD, Judge:

1. Pursuant to his pleas, appellant was found guilty of absence without leave, and pursuant to his conditional pleas, he was found guilty of wrongful use of cocaine and wrongful use of marijuana, all in violation of Articles 86 and 112a, Uniform Code of Military Justice, 10 USC §§ 886 and 912a, respectively. The convening authority approved the sentence of bad-conduct discharge, 45 days' confinement, and reduction to the lowest enlisted grade. The Court of Military Review[1] affirmed the findings and sentence. 39 MJ 659 (1993). We granted review of the following issue:[2]

WHETHER PROTRACTED CATHETERIZATION, CONDUCTED OVER THE PROTESTS OF THE SERVICEMEMBER AND SOLELY FOR THE PURPOSE OF GATHERING EVIDENCE OF

1. *See* 41 MJ 213, 229 n.* (1994).

2. The second issue concerning the independence of the intermediate appellate court judges was

resolved against appellant in *United States v. Mitchell,* 39 MJ 131 (CMA 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994).

MISCONDUCT, INFRINGES ON AN ACCUSED'S CONSTITUTIONAL RIGHT AGAINST UNREASONABLE SEARCH AND SEIZURE.

2. We hold that there was no violation of appellant's rights under the Fourth Amendment, the Due Process Clause of the Fifth Amendment, or the Military Rules of Evidence.

## FACTS

3. On December 16, 1991, appellant was admitted to the Balboa Naval Hospital, San Diego, California. The attending physician, Dr. Dirk W. Woods, and the nurse, Ms. Margaret Broadwell, who examined appellant upon his arrival, testified that he was loud, disoriented, and combative. Dr. Woods quickly ordered appellant placed in a limited restraint to immobilize his neck and back because of a suspected physical trauma. He then ordered a CAT scan to detect physical injuries and a metabolic screen testing for drugs or alcohol in the blood. These tests are performed to ensure there is no life-threatening trauma or injury. Appellant was placed in a rigid brace called a Philadelphia collar and placed on a spine board to avoid any neck or spinal column injuries. He was also secured in a four-point leather restraining device to prevent him from getting off the gurney. Because appellant was either unable or unwilling to provide a urine sample, Dr. Woods instructed Ms. Broadwell to obtain a urine sample by catheter. This procedure was ordered only after the emergency room personnel were unable to obtain a sample for over 1½ hours after appellant's arrival.

4. At the same time the order to obtain a urine sample was made at the hospital, Senior Chief Rodney A. Burton, the command's urinalysis coordinator, was sent to the hospital to obtain a specimen of appellant's urine. Appellant refused to give a urine sample to Senior Chief Burton. Ms. Broadwell told Senior Chief Burton that appellant said he had a "drug weekend." Senior Chief Burton then left the emergency room and called Lieutenant Commander Clopton, the Command Staff Judge Advocate, to inform him of this statement and sought to get a commander's authorization to obtain a urine sample.

5. Before the catheterization process started, the station commander authorized a search based on probable cause. The record is silent as to whether this search authorization directed catheterization or envisioned an order to appellant to give a urine sample. In any event, Ms. Broadwell continued the process of catheterization because "[i]t was important that we find out what was wrong" with appellant. She testified that this authorization "played no role" in her actions to catheterize appellant. She then obtained one bottle of appellant's urine for the hospital and, based upon Senior Chief Burton's request, obtained a second bottle for the unit. It is this second bottle that produced the evidence resulting in preferral of charges against appellant.

6. The judge found "that Dr. Woods ordered, and Nurse Broadwell performed, a catheterization of Petty Officer Fitten solely for authorized medical purposes."

## DISCUSSION

7. The Fourth Amendment protects appellant against unreasonable searches and seizures. Appellant is also protected therefrom by the Due Process Clause of the Fifth Amendment and the Military Rules of Evidence in the Manual for Courts–Martial, United States, 1984.

8. Appellant claims that the judge erred by violating his rights under the Due Process Clause, citing *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); Mil. R.Evid. 312(d) and (f). In this instance the involuntary catheterization was primarily for medical reasons. Two samples were drawn, one for the hospital and one for the command investigator.

9. The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized.

10. The right includes protection of the "dignitary interests in personal privacy and bodily integrity." *Winston v. Lee*, 470 U.S. 753, 761, 105 S.Ct. 1611, 1617, 84 L.Ed.2d 662 (1985). There are two clauses to the Fourth Amendment that secure the protection of these privacy interests: first the reasonableness clause, and second, the warrant clause. As the Supreme Court and this Court over a period of years have indicated, there is a preference for warranted searches absent exigent circumstances. *See, e.g., Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In this case we shall examine this warrantless search in light of the reasonableness clause together with the Fifth Amendment Due Process Clause.

11. The seminal case addressing removal of evidence from the human body is *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). The Court held in *Rochin* that evidence obtained in violation of the Due Process Clause of the Fourteenth Amendment was not admissible in evidence. The police officers entered Rochin's home and broke into his bedroom where they observed him swallowing two capsules. In attempting to obtain those two capsules, the police grabbed his throat and stuck a finger in his mouth. (101 Cal.App.2d 140, 225 P.2d 1–2 (1950)). When that was unsuccessful, they handcuffed him and took him to a hospital where an emetic solution was forced into his stomach through a tube, causing him to regurgitate the capsules. 342 U.S. at 166, 72 S.Ct. at 206. In holding there was a violation of the Due Process Clause, the Court concluded:

> The faculties of the Due Process Clause may be indefinite and vague, but the mode of their ascertainment is not self-willed. In each case "due process of law" requires an evaluation based on a disinterested inquiry pursued in the spirit of science, on a balanced order of facts exactly and fairly stated, on the detached consideration of conflicting claims, on a judgment not *ad hoc* and episodic but duly mindful of reconciling the needs both of continuity and of change in a progressive society.

> Applying these general considerations to the circumstances of the present case, we are compelled to conclude that the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically. This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation.

*Id.* at 172, 72 S.Ct. at 209–10 (citation omitted).

12. In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Court upheld the taking of a blood sample from an arrested defendant at a hospital to determine whether he was operating an automobile under the influence of alcohol. The Court examined a number of factors after concluding that there was probable cause for arrest *Id.* at 768, 86 S.Ct. at 1834. First, the Court emphasized that there was a "clear indication" that evidence of intoxication would be "found." *Id.* at 770, 86 S.Ct. at 1835. Second, the Court noted that "a reasonable" test was chosen which was highly reliable and "virtually" without "risk, trauma, or pain." Finally, the Court recognized that the test was performed "by a physician in a hospital environment according to accepted medical practices." *Id.* at 771, 86 S.Ct. at 1836. The Court did acknowledge that "serious questions ... would arise if a search involving use of a medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment...." *Id.* at 771–72, 86 S.Ct. at 1836.[3]

---

**3.** *See, e.g., United States ex rel. Guy v. McCauley*, 385 F.Supp. 193, 199 (E.D. Wis.1974) (court struck down a vaginal search of an incarcerated female because it was not conducted by "skilled

13. In *Winston v. Lee*, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662, the Court struck down a warrant permitting surgery to remove a bullet that was embedded "approximately one inch" into the "muscular tissue" of defendant's chest. This surgery would have required general anesthesia. *Id.* at 757, 105 S.Ct. at 1615. The Court noted that, even though there was probable cause, "a search for evidence of a crime may be unjustifiable if it endangers the life or health of the suspect." *Id.* at 761, 105 S.Ct. at 1617. The majority pointed out that the surgery arguably posed serious medical risks. *Id.* at 766, 105 S.Ct. at 1619–20. Additionally the prosecution had "available substantial additional evidence" that the respondent committed the robbery. *Id.* at 765, 105 S.Ct. at 1619. Finally, the Court noted that, even if the bullet was retrieved, there was some question that it would provide probative evidence of the crime. *Id.* at 766 n. 10, 105 S.Ct. at 1619 n. 10.

14. In *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978), the Court recognized that "[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency[,]" *quoting Wayne v. United States*, 318 F.2d 205, 212 (D.C.Cir.) (opinion of Burger, J.), *cert. denied*, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963). Courts following this rationale have indicated that a warrantless search to prevent death or serious injury to a suspect is permissible. *Cf. United States v. Maxwell*, 38 MJ 148 (CMA 1993), *cert. denied*, — U.S. —, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994); *United States v. Borchardt*, 809 F.2d 1115, 1117 (5th Cir. 1987); *Harrison v. State*, 860 P.2d 1280, 1283 (Alaska App.1993); *People v. Bracamonte*, 15 Cal.3d 394, 124 Cal.Rptr. 528, 540 P.2d 624 (1975); *People v. Jones*, 20 Cal.App.3d 201, 97 Cal.Rptr. 492 (1971).

15. These cases form a basis for Mil. R.Evid. 312(f), which provides:

> *Intrusions for valid medical purposes.* Nothing in this rule shall be deemed to interfere with the lawful authority of the armed forces to take whatever action may be necessary to preserve the health of a servicemember. Evidence or contraband obtained from an examination or intrusion conducted for a valid medical purpose may be seized and is not evidence obtained from an unlawful search or seizure within the meaning of Mil.R.Evid. 311.

16. Here, the taking of the body fluid from appellant was motivated by medical personnel concerned for appellant's health. The testing was not directed by the command or law enforcement officials. Rather, the test was conducted by medical personnel in a medical environment. The test was reasonably necessary to determine if there was life-threatening trauma or injury as a result of drugs or alcohol in the blood. The desires of the command had no impact on the initial intrusion and did not cause any additional intrusion. On the contrary, the command's request resulted in a *de minimis* impact by prolonging the flow of urine only long enough to fill a second bottle.

17. There was a valid medical purpose for the catheterization procedure. It was performed in a hospital by medical personnel. Any "intrusion" was *de minimis* and does not shock the conscience. For these reasons we hold that there was no violation of appellant's rights under the Fourth Amendment, the Due Process Clause of the Fifth Amendment, or the Military Rules of Evidence.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.

medical technicians"). *Compare Ewing v. State*, 160 Ind.App. 138, 310 N.E.2d 571 (1974) (upheld warrantless taking of urine sample) *with People v. Williams*, 192 Colo. 249, 557 P.2d 399 (1976) (contra).