UNITED STATES, Appellee

v.

Walter S. STEVENSON, Hospital Corpsman Third Class
U.S. Navy, Appellant

No. 06-0934

Crim. App. No. 200301272

United States Court of Appeals for the Armed Forces

Argued October 24, 2007

Decided February 14, 2008

BAKER, J., delivered the opinion of the Court, in which ERDMANN,
STUCKY, and RYAN, JJ., joined. EFFRON, C.J., filed a separate
opinion concurring in part and in the result.

Counsel

For Appellant: Lieutenant Commander M. Eric Eversole, JAGC, USN
(argued); Lieutenant A. M. Cooper, JAGC, USN.

For Appellee: Lieutenant Derek D. Butler, JAGC, USN (argued);
Major Brian K. Keller, USMC (on brief); Commander Paul C.
LeBlanc, JAGC, USN, and Major Wilbur Lee, USMC.

Amicus Curiae for Appellant: Christopher J. Eckhart (law
student) (argued); Joel M. Schumm, Esq. (supervising attorney)
(on brief) -- for the Indiana University School of Law,
Indianapolis.

Military Judge: Raymond Kreichelt

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge BAKER delivered the opinion of the Court.

Appellant was tried by a general court-martial convened with members at Naval Station Great Lakes, Illinois. Contrary to his pleas, he was convicted of rape, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2000). The court members sentenced him to confinement for three years, and a dishonorable discharge. The sentence was approved by the convening authority, and affirmed by the United States Navy-Marine Corps Court of Criminal Appeals. United States v. Stevenson (Stevenson I), 52 M.J. 504, 510 (N-M. Ct. Crim. App. 1999). On Appellant's petition we granted review of the following questions:

I.    WHETHER NCIS AND VA HOSPITAL PERSONNEL VIOLATED THE FOURTH AMENDMENT BY SEIZING APPELLANT'S BLOOD AND SEARCHING IT FOR DNA EVIDENCE WITHOUT PROBABLE CAUSE OR A SEARCH WARRANT ISSUED ON PROBABLE CAUSE?

II.   IF THIS COURT SUPPRESSES THE EVIDENCE FROM THE WARRANTLESS SEARCH AND SEIZURE, SUPRA, DID THE LOWER COURT ERR BY FAILING TO ADDRESS OR SUPPRESS BLOOD AND DNA EVIDENCE GAINED BY A SEARCH WARRANT ISSUED ON TAINTED EVIDENCE AND MATERIAL MISREPRESENTATIONS?

Based on the reasoning below, we hold that the actions of the Naval Criminal Investigative Service (NCIS) and the Department of Veterans' Affairs (VA) violated Appellant's Fourth Amendment right against unreasonable search and seizure, and we

remand the second issue to the court below for further factual determination.[1]

I.

This case involves several blood draws. In November 1997, NCIS investigators determined that Appellant was a possible suspect in a November 1992 rape of a military dependent in Hawaii, where Appellant had been stationed. At the time of the investigation, Appellant was assigned to the temporary disability retired list (TDRL), and was being treated for diabetes at the VA hospital in Memphis, Tennessee. As part of his treatment, Appellant routinely had his blood drawn by VA medical personnel for the purpose of treatment. Appellant was aware of the purpose of the draws and consented to them.

During the course of their investigation, NCIS agents learned of the treatment that Appellant was receiving from the VA, including the periodic blood draws. As a result, NCIS requested that VA medical personnel draw an additional vial so that law enforcement authorities might have that blood tested to identify Appellant's DNA. This request was vetted by lawyers at the VA, who concluded that the blood could be drawn for and searched by NCIS. As a result, at Appellant's routine, consensual blood draw on June 3, 1998, the VA staff drew an

---

[1] Oral argument in this case was held at the Indiana University School of Law, Indianapolis, as a part of Project Outreach.

additional vial without informing Appellant of the purpose for doing so. This sample was sent to the United States Criminal Investigations Laboratory and tested to determine the DNA composition of the blood for law enforcement purposes. It is this blood draw that is implicated by the first assigned issue.

At trial, the military judge excluded from evidence the vial of blood drawn and tested without Appellant's permission. NCIS agents then sought and obtained a warrant from a United States federal magistrate in Tennessee, permitting NCIS agents to obtain an additional vial of Appellant's blood. It is this request and warrant that are at the root of Appellant's second assigned issue.

This is the second time this Court has considered Appellant's case. In United States v. Stevenson (Stevenson II), 53 M.J. 257 (C.A.A.F. 2000), we held that Military Rule of Evidence (M.R.E.) 312(f) applied to persons on the TDRL, and remanded the case for further proceedings to determine whether, in light of United States v. Fitten, 42 M.J. 179 (C.M.A. 1995), "the prolonged intrusion of the needle in [Appellant's] arm while a second vial was placed on the vacuum needle, and then for some additional period while the blood was extracted into the vial, was a de minimis intrusion with respect to the Fourth Amendment and Mil. R. Evid. 312(f)." Stevenson II, 53 M.J. at 260-61.

4

On remand the military judge found as a matter of fact and law that: (1) Appellant's blood draw was motivated by medical personnel concerned with Appellant's diabetic condition; (2) the blood draw was not directed by law enforcement officials, but rather was part of his medical treatment by the VA; (3) the blood draw was conducted by medical personnel in a VA hospital environment; (4) the NCIS request for a blood sample had no impact on the initial needle intrusion and did not cause any additional intrusion; (5) the NCIS request for a blood sample resulted in a de minimis impact by prolonging the time the needle was in Appellant's arm only by a few seconds; and (6) the initial blood draw was for a valid medical purpose and necessary to preserve the health of a servicemember.  The military judge also found that, since the blood was drawn for a valid medical purpose, M.R.E. 312 did not "limit the purposes to which the seized evidence may be put or used."  The United States Navy-Marine Corps Court of Criminal Appeals affirmed the military judge's findings of fact and conclusions of law.  United States v. Stevenson (Stevenson III), 65 M.J. 639, 645 (N-M Ct. Crim. App. 2006).

"We review the denial of a motion to suppress for an abuse of discretion."  United States v. Rader, 65 M.J. 30, 32 (C.A.A.F. 2007) (citing United States v. Khamsouk, 57 M.J. 282, 286 (C.A.A.F. 2002)).  Findings of fact are affirmed unless they

are clearly erroneous; conclusions of law are reviewed de novo. United States v. Flores, 64 M.J. 451, 454 (C.A.A.F. 2007) (citing Khamsouk, 57 M.J. at 286).

## II.

On appeal, Appellant argues that the Government did not possess a special health care need under M.R.E. 312 sufficient to permit the violation of his Fourth Amendment right through the warrantless seizure and search of his blood for DNA testing. To hold otherwise, Appellant argues, would be to eliminate any distinction between the military's interest in the provision of health care, and a general law enforcement interest. The Government responds that the drawing of Appellant's blood at the VA hospital represented a de minimis intrusion justified by the Government's necessary interest in the health of its servicemembers in order to determine their fitness for duty, and therefore did not violate Appellant's Fourth Amendment rights.

The threshold question is whether Appellant had an expectation of privacy in his blood that required the Government to obtain a warrant prior to seizing and searching that blood for law enforcement purposes. Ordinarily, as the Supreme Court has held, a person has a reasonable expectation of privacy in his blood. See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 616 (1989). Furthermore, while military service necessitates a reduced expectation of privacy in bodily fluids

with respect to drug testing, servicemembers otherwise generally retain their Fourth Amendment right against unreasonable search and seizure.  See Murray v. Haldeman, 16 M.J. 74, 81 (C.M.A. 1983); Committee for GI Rights v. Callaway, 518 F.2d 466, 476 (D.C. Cir. 1975).

Of course, within the context of bodily fluids, there are a number of exceptions to the warrant requirement as well as circumstances that would negate the need for a warrant.  These include situations where there exists both probable cause and the need to prevent the loss of evidence, see Schmerber v. California, 384 U.S. 757, 770-71 (1966), where the search is necessary to save someone's life and the evidence is in plain view, see Mincey v. Arizona, 437 U.S. 385, 392-93 (1978), and where the government demonstrates "'special needs, beyond the normal need for law enforcement,'" see Chandler v. Miller, 520 U.S. 305, 313-14 (1997) (citation omitted).  In addition, M.R.E. 312(f), rather than being an exception to the warrant requirement, authorizes the admission of evidence that was developed incident to a valid medical purpose.

M.R.E. 312(f) states:

> Nothing in this rule shall be deemed to interfere with the lawful authority of the armed forces to take whatever action may be necessary to preserve the health of a service-member.  Evidence or contraband obtained from an examination or intrusion conducted for a valid medical purpose may be seized and is not evidence obtained from an

      unlawful search or seizure within the meaning of Mil. R. Evid. 311.

The specific question raised by this case is whether Appellant had an objectively reasonable expectation of privacy in his bodily integrity (i.e., DNA), in light of M.R.E. 312(f).  But for this Court's application of Fitten in Stevenson II, the answer would be straightforward.

     The Drafters' Analysis of the Military Rules of Evidence states that M.R.E. 312(f) was intended to make "it clear that the Armed Forces retain their power to ensure the health of their members."  Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-20 (2005 ed.) [hereinafter Drafters' Analysis].  The Drafters' Analysis continues, "[a] procedure conducted for valid medical purposes may yield admissible evidence.  Similarly, Rule 312 does not affect in any way any procedure necessary for diagnostic or treatment purposes."  Id.  Thus, M.R.E. 312(f) permits the admission of evidence discovered during the regular course of medical treatment.

     M.R.E. 312(f) is intended to ensure the provision of essential medical care when necessary to preserve the health of servicemembers.  The rule permits that evidence found or seized in the course of medical treatment, which is to say, that is incidental to medical treatment, is not subject to suppression.

In this way, the rule orients the government to the provision of medical assistance to the servicemember, without consideration of the legal requirements (and potential delays) that might pertain to the law enforcement collection of evidence. However, the rule is not intended to serve as cover and concealment for law enforcement inquiries or as an exception to otherwise applicable Fourth Amendment requirements. Therefore, the rule does not serve to permit additional searches and seizures that are not incident to treatment. Whether such additional searches are admissible is a question of Fourth Amendment analysis.

Nor is there any indication that either Congress, through delegated authority to the President under Article 36, UCMJ, 10 U.S.C. § 836 (2000), or the President through promulgation of M.R.E. 312 and M.R.E. 313 intended to abolish servicemembers' expectation of privacy in blood drawn in furtherance of military preparedness. To the contrary, 10 U.S.C. § 1565a (2000) (governing the use of DNA collected for casualty identification) reflects considerable concern about the handling of DNA. In this case, for these reasons, M.R.E. 312(f) is not applicable to the second vial of blood drawn at the VA hospital, and does not otherwise obviate Appellant's reasonable expectation of privacy. The ruling of the United States Navy-Marine Corps Court of Criminal Appeals with respect to the exclusion of the vial of blood drawn at the VA hospital is therefore reversed.

In fairness to the military judge, the lower court and the parties, the clarity of this conclusion was not forecast by this Court's discussion of Fitten in Stevenson II.  In Fitten, the appellant -- admitted to the emergency room because of erratic behavior apparently due to drug use -- underwent an involuntary catheterization in order to determine the cause of his condition, so as to inform subsequent treatment.  42 M.J. at 180.  The appellant's command requested that, during the procedure, an additional sample of the urine be collected, and given to the command.  Id.  This Court upheld the admission of the urine test under M.R.E. 312, finding among other things that the catheterization caused only a de minimis intrusion, which did not "shock the conscience."  Id. at 182.  The de minimis nature of the search was one of a totality of circumstances relied on by the Court.  Id.  However, in Stevenson II the de minimis nature of the search was referenced as the conclusion of the Court.  53 M.J. at 260.  In turn, the Court of Criminal Appeals on remand referred to this conclusion as the holding in Fitten.  Stevenson II, 65 M.J. at 644-45.

However, while the degree of an intrusion may inform whether an objectively reasonable expectation of privacy exists, the Supreme Court has not adopted a de minimis exception to the Fourth Amendment's warrant requirement.  To the contrary, the Supreme Court has held that the need for a warrant is not

relieved by the use of advanced search methods that are imperceptible to the subject of the search. See, e.g., Kyllo v. United States, 533 U.S. 27, 34, 40 (2001) (the use of infrared cameras to determine the heat of a house where federal agents suspected marijuana was being grown). Thus, to the extent that Fitten and Stevenson II stand for the proposition that there is a de minimis exception to the Fourth Amendment or to M.R.E. 312, they are overruled.

The Fourth Amendment problem in this case was that the vial of blood taken from Appellant and provided to NCIS represented a distinct search and seizure from that undertaken incident to Appellant's treatment for diabetes.[2] Whatever might be said of Appellant's expectation of privacy with regard to the blood draw itself, a search for DNA was not incident to his treatment for diabetes and was not otherwise authorized by warrant or warrant exception.

---

[2] The facts of this case do not require us to reconsider the extent, if any, to which M.R.E. 312(f) applies where, after valid medical testing, some of the remaining blood from the same vial was made available to the NCIS for its investigative purposes. See Stevenson II, 53 M.J. at 260.

III.

If the military judge erred with respect to the blood drawn at the VA hospital, analytic emphasis turns to the second issue. Were the DNA test results obtained from the blood draw conducted pursuant to the search warrant admissible? Appellant argues that the military judge erred in upholding the magistrate's determination of probable cause, despite misleading statements made to the magistrate by NCIS agents, and the withholding from the magistrate facts relating to the exclusion of the original blood sample. The Government counters that, despite these omissions and misstatements, probable cause existed for the issuance of the warrant, and that the basis for the probable cause was independent of the initial DNA search. These issues were not fully adjudicated by the lower court in light of its determination of Issue I.

As is often the case in the Fourth Amendment context, the law is set but the facts are harder to fix. The question presented at this point is whether the third blood draw was a product of a warrant predicated on information independent from the evidence adduced from the blood draw at the VA hospital. The answer necessarily entails a factual determination informed by the sometimes competing factual recitations of the parties. Therefore, we will remand to the lower court, for consideration of two related questions in light of our resolution of Issue I:

first, to determine whether the warrant was derivative from a source of information independent from the seizure and search of Appellant's blood at the VA hospital; and second, to consider whether the warrant was valid in light of Appellant's argument that statements and omissions to the magistrate were not made in good faith.

## DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General for remand to that court for consideration of granted Issue II in light of our resolution of Issue I.

13

United States v. Stevenson, 06-0934/NA

EFFRON, Chief Judge (concurring in part and in the result):

I agree with the majority that a remand is appropriate in this case.  I would distinguish rather than overrule United States v. Fitten, 42 M.J. 179 (C.M.A. 1995), however.  In Fitten, the catheterization for a valid medical purpose under Military Rule of Evidence (M.R.E.) 312(f) was prolonged to obtain a second bottle of urine for disciplinary purposes.  42 M.J. at 180.  Once the medical purpose under M.R.E. 312 was fulfilled, the non-probable cause warrantless search could be continued if it was otherwise reasonable under the Fourth Amendment.  See M.R.E. 314(a); M.R.E. 314(k).  The Court in Fitten concluded that the search was reasonable under the specific circumstances of the case.  42 M.J. at 182.

Although Fitten considered the de minimis nature of the intrusion a factor in its Fourth Amendment reasonableness analysis, it did not establish a general principle of law that all de minimis additional extractions are inherently reasonable.  Fitten did not relieve the government of its burden under M.R.E. 311(e) to demonstrate reasonableness under the Fourth Amendment when a search, initiated under M.R.E. 312(f), extends beyond the point when the medical purpose has been fulfilled.

In the present case, the search extended beyond the period required to fulfill a medical purpose under M.R.E. 312(f).  Therefore, even if the extension was de minimis, the evidence obtained during the extension could be admitted at trial only if the extended search was reasonable under the Fourth Amendment.

Here, the object of the law enforcement search was DNA, a matter not involving time sensitivity or other circumstances that might make it reasonable to extend the search beyond the purpose of M.R.E. 312(f) without a search authorization.  There was no risk of rapid dissipation or loss of evidence.  The law enforcement officials in the present case could take whatever time was necessary to obtain a search authorization, and Appellant's DNA would be the same as it was on the date of his visit to the hospital for the initial blood draw in this case.  Under these circumstances, the extension of the search to draw the second vial was unreasonable, and the evidence derived from the search was inadmissible.  Under other circumstances, a de minimis extension of an otherwise lawful intrusion might well be reasonable under the Fourth Amendment and the Military Rules of Evidence.  M.R.E. 311; M.R.E. 314.