# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**R.Q. WARD, J.R. MCFARLANE, K.M. MCDONALD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**RICHARD B. FREEMAN III**
**CRYPTOLOGIC TECHNICIAN (TECHNICAL)**
**SECOND CLASS (E-5), U.S. NAVY**

**NMCCA 201300102**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 3 October 2012.
**Military Judge:** CDR Colleen Glaser-Allen, JAGC, USN.
**Convening Authority:** Commander, Navy Region Mid-Atlantic, Norfolk, VA.
**Staff Judge Advocate's Recommendation:** LCDR S.J. Gawronski, JAGC, USN.
**For Appellant:** Capt Jason Wareham, USMC.
**For Appellee:** Maj Paul Ervasti, USMC; LT Ann Dingle, JAGC, USN.

**30 April 2014**

---
**OPINION OF THE COURT**
---

THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.

McFARLANE, Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of operation of a motor vehicle with a blood alcohol content ("BAC") greater than .08, reckless operation of a vehicle, and two specifications of negligent homicide, in violation of Articles 111 and 134, Uniform Code of Military

Justice, 10 U.S.C. §§ 811 and 934.[1]  The members sentenced the appellant to six years' confinement, reduction to pay grade E-1, and a dishonorable discharge.  The convening authority (CA) approved the sentence as adjudged, and except for the punitive discharge, ordered the sentence executed.

The appellant raises eight assignments of error: (1) that his trial defense team was ineffective; (2) that the military judge committed plain error when she admitted the appellant's hospital blood draw into evidence; (3) that the military judge committed plain error when she allowed expert testimony of alcohol extrapolation estimates based upon the Widmark Formula; (4) that the military judge abused her discretion by admitting into evidence a photograph of the speedometer from the appellant's vehicle recovered at the crash site; (5) that the appellant was prejudiced by a 156-day delay between the conclusion of trial and the CA's action; (6) that military judge abused her discretion when she refused to permit the appellant to use the word "acquittal" in his unsworn statement as evidence of emotional impact; (7) that the CA abused his discretion by referring the charges without a legitimate basis and; (8) that the military judge erred in her instructions by not sufficiently emphasizing the actions of others as potential intervening causes.[2]

After careful consideration of the record of trial, the appellant's assignments of error, and the pleadings of the parties, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

**Background**

On 25 July 2009, the appellant went to a bar in Norfolk, VA, where he spent most of the evening drinking.  In the same bar, on the same night, four friends, TJ, CR, RP, and LK, spent the evening socializing after one of the group recently returned

---

[1] The appellant was also convicted of operation of a motor vehicle while drunk.  However, the military judge dismissed this specification as an unreasonable multiplication of charges with the operation of a motor vehicle with a blood alcohol content greater than .08.

[2] This issue was raised pursuant to *United States* v. *Grostefon*, 12 M.J. 431 (C.M.A. 1992).

home from deployment in Afghanistan.[3]  As the bar was closing, the appellant noticed the four friends outside the bar were unable to get a cab, so he offered them a ride home.  The four friends accepted the appellant's offer.  On the drive home, the appellant was later described by witnesses as speeding and driving in an aggressive manner.  A short time later, the appellant's car skipped a curb and crashed into a tree, killing two of the passengers, permanently disabling a third passenger, and inflicting moderate injuries on the fourth.  A nearby bus driver was also injured when pieces of the appellant's car flew through the bus windshield.

The appellant was immediately taken to a nearby hospital to be treated for his injuries.  Upon arrival, the emergency room physician ordered a nurse on duty to draw the appellant's blood for testing.  The physician testified at trial that ordering blood-work was standard operating procedure for acute trauma injuries such as the appellant's, especially when head trauma is likely.  Furthermore, he stated that the appellant appeared "somewhat belligerent and not acting appropriately," and that a blood draw was medically necessary at the time in order to rule out a traumatic brain injury.  Record at 625.

On 2 August 2012, Officer Lawson of the Norfolk City Police Department filed an affidavit and application for a search warrant with a Virginia Commonwealth magistrate, which led to a search warrant for the appellant's blood sample from the night of the accident.[4]  Test results later revealed a BAC of .12.

As a result of the accident and related injuries, the Commonwealth of Virginia charged the appellant with two counts of manslaughter and one count of maiming.  During the twenty-two months it took the state to bring the appellant's case to trial, the appellant was restricted to base by the terms of a pretrial release order from state court.

---

[3] TJ and CR were both active duty Navy service members at the time the accident.

[4] On the evening of the accident, Officer Prins of the Norfolk City Police Department asked the nurse on duty (at the hospital), without a warrant, whether the appellant's BAC was above the legal limit.  The same nurse also testified at the state trial (described *infra*) that the blood was drawn pursuant to hospital SOP supporting the need to preserve evidence for prosecution.  (Appellate Exhibit XXVI at 94.)  Appellate defense counsel cites both of these facts in support of his argument that the blood draw was an illegal seizure under the 4th Amendment.

Following the state trial, which resulted in an acquittal, the CA referred charges of drunken and reckless driving and negligent homicide to a general court-martial. During the pretrial stages of the court-martial proceedings, the appellant was assigned two military defense counsel.[5] Before proceeding with their representation, trial defense counsel (TDC) obtained the case file from the civilian defense attorney who represented the appellant at the state trial. Appellant's Brief of 23 Sep 2013 at Appendix 1.

Before trial, the Government made a motion in *limine* to pre-admit the results of blood alcohol testing performed on the appellant's blood at both Sentara General Hospital and at Virginia's Department of Forensic Science. The Government also moved to pre-admit a photograph of the speedometer that detached from the appellant's car during the accident and landed some distance from the car. The appellant filed written responses opposing both motions. The Government later withdrew the motion to pre-admit the BAC tests, and the military judge admitted the photo over defense objections.

During the Government's case-in-chief, several experts were called to testify against the appellant. These experts included a toxicologist, an accident reconstructionist, and a neurosurgeon. TDC did not challenge these experts as to their qualifications, reliability of their testimony, or the underlying science behind their conclusions.[6] The toxicologist, Dr. Connie Luckie, used the Widmark Formula to explain approximately how many drinks a person of like constitution to the appellant would consume to achieve a certain BAC. Dr. Luckie testified that in order to achieve a BAC of .10 –.11, a 165 pound man[7] would have to consume "approximately five to six drinks" within one hour, or more than five to six drinks if drank over a period of more than an hour. Record at 771.

---

[5] The appellant also hired a civilian attorney for his defense.

[6] Appellate defense counsel cites this lack of challenge as ineffective assistance of counsel, citing *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588-89, 596 (1993).

[7] At the time of the accident, the appellant weighed roughly 165 pounds.

4

**Analysis**

1. <u>Ineffective Assistance of Counsel (IAC)</u>

The appellant alleges that his trial defense counsel was ineffective in six ways: (1) by not filing a motion to suppress the hospital blood draw; (2) by not contacting the civilian defense attorney who secured the acquittal in state court on similar charges; (3) by failing to make a RULE FOR COURTS-MARTIAL 917, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) motion at the conclusion of the Government's case; (4) by failing to request that the judge consider the twenty-two months of restriction to base for the purposes of assigning *Pierce*[8] confinement credit; (5) by not seeking to compel the testimony of Officer Prins; and (6) by failing to restrict the expert testimony offered at trial.

In reviewing for ineffective assistance, the court "looks at the questions of deficient performance and prejudice de novo." *United States* v. *Gutierrez*, 66 M.J. 329, 330-31 (C.A.A.F. 2008) (citation omitted).

A military accused is entitled to the effective assistance of counsel under the Constitution and Article 27(b), UCMJ. *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). We analyze the appellant's claim of IAC under the test set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687) (additional citation omitted).

When determining the sufficiency of counsel's performance under the first prong of *Strickland*, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[9] *Strickland*, 466 U.S. at 689. Furthermore, the burden of establishing the truth of factual matters relevant to the claim of ineffective assistance rests with the accused. *Tippit*, 65 M.J. at 76. If there is a factual dispute on a matter pertinent to the claim,

---

[8] *United States v. Pierce*, 27 M.J. 367 (C.A.A.F. 1989).

[9] The appellant can "rebut this presumption by pointing out specific errors made by defense counsel which were unreasonable under prevailing professional norms." *United States* v. *Scott*, 24 M.J. 186, 188 (C.M.A. 1987) (citation omitted).

the determination as to whether further fact-finding will be ordered is resolved under *United States v. Ginn,* 47 M.J. 236 (C.A.A.F. 1997). "If, however, the facts alleged by the defense would not result in relief under the high standard set by *Strickland*, we may address the claim without the necessity of resolving the factual dispute." *Tippit*, 65 M.J. at 76 (citing *Ginn*, 47 M.J. at 248).

### a. Motion to Suppress

"(W)hen a claim of [IAC] is premised on counsel's failure to make a motion to suppress evidence, an appellant must show that there is a reasonable probability that such a motion would have been meritorious." *United States* v. *Jameson*, 65 M.J. 160, 163-64 (C.A.A.F. 2007) (quoting *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001)). In determining whether the appellant has a "reasonable probability" of succeeding on this claim, this court considers the totality of the circumstances. *Id.* at 164.

Here, the appellant contends that, had TDC made a motion to suppress the blood draw, there was a reasonable probability of success because of an alleged illegal search. We disagree. At trial, the emergency room physician testified that, when blunt trauma is suspected, a blood draw is standard operating procedure so that the treating physician can determine if the patient is suffering from a traumatic brain injury, or is simply showing signs of intoxication. Moreover, he testified that a blood draw was "medically necessary" in this case because the appellant was "somewhat belligerent and not acting appropriately." Record at 625-26. For these reasons, this court fails to find, under the totality of the circumstances, a reasonable probability that the motion to suppress would have been meritorious.

### b. Failure to Contact Civilian Attorney

The appellant alleges that the TDC's failure to contact the civilian defense counsel who handled the appellant's state trial amounted to IAC. We disagree. In his brief, the appellant himself concedes that TDC obtained all pertinent records from the civilian attorney who handled the appellant's state trial. Appellant's Brief at Appendix 1. Defense counsel is under no obligation to discuss trial strategy with prior counsel, and this court will not second-guess strategic or tactical trial decisions of defense counsel absent the appellant's showing of specific defects in his counsel's performance that were

6

"'unreasonable under prevailing professional norms.'" *United States v. Mazza,* 67 M.J. 470, 475 (C.A.A.F. 2009) (quoting *United States v. Perez,* 64 M.J. 239, 243 (C.A.A.F. 2006)). Moreover, it is abundantly clear that any information germane to the court-martial could have been gleaned from TDC reading the record of trial from the state proceedings. As such, we find no merit in this claim by appellant.

Because this court will not engage in second-guessing strategic or tactical decisions at trial by defense counsel, as stated above, we also find no merit in the appellant's remaining IAC claims. *United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

## 2. The Blood Draw

The appellant contends that the military judge erred by admitting into evidence the appellant's blood sample taken at the hospital on the night of the accident. Specifically, he avers that the blood was not drawn for treatment or diagnosis, but instead was taken in order to preserve evidence of a potential crime. In addition, he asserts that the blood sample was obtained by law enforcement without sufficient probable cause, and was thus inadmissible. We disagree.

When there is no objection at trial, this court reviews a claim of erroneous admission of evidence for plain error. *United States* v. *Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007). "Plain error is established when: (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights". *Id.* Furthermore, the appellant has the burden of showing all three prongs of the test are satisfied. *United States* v. *Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

Any evidence, including a blood sample, "obtained from an examination or intrusion conducted for a valid medical purpose may be seized and is not evidence obtained from an unlawful search or seizure."[10] MIL R. EVID. 312(f); *see also United States* v. *Stevenson*, 66 M.J. 15, 18 (C.A.A.F. 2008). Here, the emergency room physician testified that it was "medically

---

[10] The Drafters' Analysis to MIL. R. EVID. 312(f) states that "[a] procedure conducted for valid medical purposes may yield admissible evidence. Similarly, Rule 312 does not affect in any way any procedure necessary for diagnostic or treatment purposes." Thus, MIL. R. EVID. 312(f) permits the admission of evidence discovered during the regular course of medical treatment. *United States* v. *Stevenson*, 66 M.J. 15, 18 (C.A.A.F. 2008).

7

necessary" to draw and test the appellant's blood, and furthermore that it was standard operating procedure to do so in the event of head trauma. Record at 624-25. Nowhere on the record does the doctor testify that the blood was drawn for evidence preservation purposes, and this court sees no reason to disbelieve the doctor's testimony. As such, we find that the blood was drawn for a valid medical purpose.

The appellant's next contention, that his blood sample was seized by law enforcement using an invalid warrant, and was thus inadmissible, yields a similar result. The appellant contends that the warrant obtained by Officer Lawson lacked sufficient probable cause because it referenced the initial investigating officer's arrest of the appellant, which the appellant claims was the result of an illegal search. He argues that the initial investigating officer inquired about the appellant's BAC levels prior to making an arrest, and without a warrant, improperly used this information to execute the arrest. Even assuming that these facts as stated by the appellant are true, the affidavit filed by Officer Lawson only references the appellant's prior "arrest" and makes no mention of the appellant's BAC levels. Given the state of the evidence at the time of arrest, there is no doubt that sufficient probable cause existed to arrest the appellant for driving while intoxicated, even without knowledge of his BAC levels at the hospital. Accordingly, we find no error in the state magistrate's consideration of the appellant's arrest, and no merit in the appellant's argument that the search warrant was invalid.

3. Expert Testimony

The appellant next alleges that the Widmark Formula, used by the Government's toxicology expert, was not sufficiently reliable for admission into a court-martial.[11] Where the appellant does not object at trial, this court reviews the admission of expert testimony for plain error. *United States* v. *Green*, 55 M.J. 76, 81 (C.A.A.F. 2001).

Under the Military Rules of Evidence, "[a]n expert witness may provide opinion testimony if '(1) the testimony is based upon sufficient facts and data, (2) the testimony is the product

---

[11] The Widmark Formula, also known as retrograde extrapolation, is a scientific method used to estimate the number of drinks consumed by, or the BAC level of, a particular individual at a particular time. This formula takes into account a person's gender and body-weight, along with other known variables at the time of testing. J. Nicholas Bostic, *Alcohol Related Offenses: Retrograde Extrapolation After Wager*, 79 MI BAR JNL 668 (Jun 2000).

of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'"  *United States* v. *Graner*, 69 M.J. 104, 109-10 (C.A.A.F. 2010) (quoting MIL. R. EVID. 702).  Moreover, military courts apply the *Houser*[12] factors when determining whether to admit or exclude expert testimony.  The *Houser* factors are: (1) the qualifications of the expert, MIL. R. EVID. 702; (2) the subject matter of the expert testimony, MIL. R. EVID. 702; (3) the basis for the expert testimony, MIL. R. EVID. 703; (4) the legal relevance of the evidence, MIL. R. EVID. 401 and 402; (5) the reliability of the evidence, *United States* v. *Gipson*, 24 M.J. 246 (C.M.A. 1987); and (6) whether the probative value of the testimony outweighs other considerations, MIL. R. EVID. 403. *United States* v. *Houser*, 36 M.J. 392, 397 (C.M.A. 1993).[13] Satisfying every factor is not necessary, as the "gatekeeping inquiry must be tied to the facts of a particular case."  *United States v. Sanchez*, 65 M.J. 145, 149, (C.A.A.F. 2007) (internal quotation marks and citation omitted).

At trial, Dr. Luckie testified that forensic toxicologists use the Widmark Formula to extrapolate approximately how many drinks a person has consumed based on their BAC, gender, and weight, and that the formula is commonly accepted within their field.  Moreover, the Widmark Formula has been regularly employed throughout American courts for this very purpose for many years.  *See e.g. Willis* v. *City of Fresno*, 2013 U.S. Dist. LEXIS 166722 (E.D. Cal., Nov. 21, 2013); *United States v. Tsosie*, 791 F. Supp. 2d 1099 (D.N.M. 2011); *Shea* v. *Royal Enters.*, 2011 U.S. Dist. LEXIS 63763 (S.D.N.Y. Jun. 16, 2011).[14]

---

[12] *United States* v. *Houser*, 36 M.J. 392 (C.M.A. 1993).

[13] The Supreme Court case *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588-89, 596 (1993) is also germane to this discussion.  In *Daubert*, the Supreme Court rejected the requirement that a scientific theory be "generally accepted" in the scientific community, and made clear that the trial court plays the role of gatekeeper when determining the admissibility of expert testimony.  They further outlined four factors a court *may* consider; (1) whether the theory or technique has been tested; (2) whether it has been subject to peer review; (3) the known or potential rate of error and the standards controlling the techniques operation; and (4) whether the theory is generally accepted in its particular field.

[14] The District Court in *Shea* stated "the Widmark formula is a 'robust' formula that has been tested and applied for nearly 80 years.  *See* A. Barbour, Simplified Estimation of Widmark "r" Values by the Method of Forrest, 41 Science & Justice 53 (2001) . . . *see also* G. Simpson, Medicolegal Alcohol Determination: Widmark Revisited, 34/5 Clin. Chem. 888 (1988) . . . (characterizing Widmark's work on medico-legal alcohol determination as 'the seminal work in this field').  The Widmark formula has also been the subject of peer review.  *See id*."  (footnote omitted)

The expert testimony in this case satisfied the test set forth in *Houser*, and for that reason we find that the judge did not commit plain error in admitting Dr. Luckie's testimony.

## 4. Admission of Speedometer into Evidence

The appellant asserts that the military judge abused her discretion by admitting into evidence a photograph of the speedometer from the appellant's vehicle that was recovered after the accident. We review a military judge's decision to admit evidence under an abuse of discretion standard. *United States* v. *Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). This standard is a strict one, and requires that the challenged action be arbitrary, fanciful, clearly unreasonable or clearly erroneous in order for relief to be granted. *United States* v. *Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citing *United States* v. *White*, 69 M.J. 236, 239 (C.A.A.F. 2010)).

At trial, TDC objected to this evidence citing MIL. R. EVID. 403. The military judge conducted the appropriate MIL. R. EVID. 403 balancing test, and determined that the probative value of the evidence being offered was not substantially outweighed by the danger of unfair prejudice. Moreover, to quell any concerns over member confusion, the military judge cited the Certificate of Analysis from the Commonwealth of Virginia, offered by the defense, which clearly stated that the speedometer did not indicate the speed the car was traveling at the time of impact. Although the military judge recognized the potential risk of unfair prejudice and member confusion, she took adequate precautions and offered valid reasoning for her decision on the record. For these reasons, we find that the military judge did not abuse her discretion, thus no relief is warranted.

## 5. Delay Prior to CA's Action

The appellant next argues that the 156-day delay prior to the CA's action in this case violated his due process right to a speedy post-trial review, entitling him to relief under the line of cases that includes *United States* v. *Moreno*, 63 M.J. 129 (C.A.A.F. 2006). The appellant's assignment of error raises two questions which we review *de novo*: first, was there a violation of his due process right to speedy post-trial review; and second, if there was a denial of due process, was it harmless beyond a reasonable doubt. *United States v. Allison,* 63 M.J. 365, 370 (C.A.A.F. 2006).

Under the *Moreno* standards, a CA's failure to take action within 120 days of the completion of trial is presumptively unreasonable and triggers the four-factor analysis set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972).[15] *Moreno*, 63 M.J. at 142. However, in cases involving claims that an appellant has been denied his due process right to speedy post-trial review and appeal, we may look initially to whether the denial of due process, if any, is harmless beyond a reasonable doubt. *Allison,* 63 M.J. at 370, 371.

Assuming without deciding that this 156-day delay denied the appellant his right to speedy review and appeal, we must decide whether, under the totality of the circumstances of the case, this error was proven by the Government to be harmless beyond a reasonable doubt. *United States v. Bush*, 68 M.J. 96, 102-03 (C.A.A.F. 2009). Nothing in the record of trial suggests that the appellant suffered any prejudice, and he does not allege any. Therefore, we conclude that this error was harmless beyond a reasonable doubt and no relief is warranted.

6. <u>Remaining Assignments of Error</u>

After reviewing the record of trial and the pleadings of the parties, we conclude that the remaining assignments of error raised by the appellant do not merit either relief or further analysis. *Matias*, 25 M.J. at 363.

**Conclusion**

The findings and sentence as approved by the CA are affirmed.

Senior Judge WARD and Judge MCDONALD concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[15] The *Barker* factors applied in a speedy trial analysis are: 1) the length of the delay; 2) the reasons for the delay; 3) the appellant's assertion of the right to timely review and appeal; and 4) prejudice. *Barker*, 407 U.S. at 530-31.

11