# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

### No. 201600189

———————————

### UNITED STATES OF AMERICA
Appellee

v.

### REGINALD A. PATTERSON
Corporal (E-4), U.S. Marine Corps
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Major Mark D. Sameit, USMC.
Convening Authority: Commanding Officer, Marine Air Support
Squadron-3, Marine Air Control Group-38, 3d Marine Aircraft Wing,
Camp Pendleton, CA.
Staff Judge Advocate's Recommendation: Colonel Daren K.
Margolin, USMC.
For Appellant: Commander Chris D. Tucker, JAGC, USN.
For Appellee: Major Cory A. Carver, USMC; Lieutenant Robert J.
Miller, JAGC, USN.

———————————

Decided 30 June 2017

———————————

Before MARKS, RUGH, and JONES, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited
as persuasive authority under NMCCA Rule of Practice and
Procedure 18.2.**

———————————

MARKS, Senior Judge:

At a special court-martial, a military judge convicted the appellant,
pursuant to his pleas, of one specification of aggravated assault in violation of
Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2012).
The military judge sentenced the appellant to 175 days' confinement and a

bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged but, pursuant to a pretrial agreement, suspended all confinement in excess of three months. He then ordered the sentence, except for the discharge, executed.

The appellant asserts five assignments of error (AOEs): (1) that he was denied his right to a speedy trial guaranteed by RULE FOR COURTS-MARTIAL (R.C.M.) 707(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), when he was not brought to trial within 120 days of the imposition of pretrial restraint and did not knowingly and voluntarily waive his right to a speedy trial; (2) that the military judge erred by finding his pretrial restriction was not tantamount to confinement; (3) that he was denied his right to speedy trial pursuant to Article 10, UCMJ, when he was not brought to trial within 120 days of the imposition of pretrial restraint and did not knowingly and voluntarily waive his right to a speedy trial; (4) that he was denied his right to a speedy trial guaranteed by the Sixth Amendment when he was not brought to trial by the government in a speedy manner and he did not knowingly and voluntarily waive his right to a speedy trial; and (5) that his Sixth Amendment right to counsel was violated because his defense counsel was ineffective for not raising the speedy trial violation before the trial court. We find no error materially prejudicial to the substantial rights of the appellant and affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

As the appellant's AOEs stem from the time it took the government to bring him to trial, we begin by examining the timeline of events in the record:

17 August 2015 – An early morning argument between the appellant and his wife in their home aboard Marine Corps Base Camp Pendleton, California, became physical when he pulled her from the couch to the floor, wrapped his hands around her neck, and squeezed as hard as he could before releasing her. After the appellant left home later that morning, his wife reported the incident to law enforcement.

18 August 2015 – The appellant entered pretrial confinement.

25 August 2015 – The appellant was released from pretrial confinement. His commanding officer imposed a military protective order (MPO) on behalf of his wife and ordered him into pretrial restriction until his trial date.

16 September 2015 – A single specification of Article 128, UCMJ, for aggravated assault was preferred against the appellant.

14 October 2015 – Scheduled date of an Article 32, UCMJ, preliminary hearing.

21 October 2015 – Actual date of the Article 32, UCMJ, preliminary hearing following two continuance requests from the appellant's trial defense counsel (TDC). Seven days were authorized as excludable delay under R.C.M. 707.

4 November 2015 – The Article 32, UCMJ, preliminary hearing officer submitted his report recommending general court-martial.

8 December 2015 – The CA referred the charge to a special court-martial.

14 December 2015 – The appellant and his TDC signed a pretrial agreement. The CA signed it on 16 December 2015. The pretrial agreement neither specified a trial date nor explicitly acknowledged the appellant's waiver of motions.

8 January 2016 – The appellant was arraigned, pled guilty, and was sentenced.

The appellant's unconditional guilty pleas came 143 days after he commenced temporary pretrial confinement. The military judge awarded eight days of *Allen* credit for the pretrial confinement from 18 to 25 August 2015.[1] The TDC moved for additional confinement credit, arguing the appellant's pretrial restriction was tantamount to confinement.[2] The military judge disagreed but found that the pretrial restriction did violate Article 13, UCMJ, which prohibits pretrial punishment. He awarded additional day-for-day credit for the 143 days of pretrial restriction. With 151 days of confinement credit and a pretrial agreement to suspend adjudged confinement in excess of three months, the appellant was taken off restriction the day of his court-martial.

TDC did not assert the appellant's regulatory, statutory, or constitutional right to a speedy trial during the court-martial or the post-trial process.

## II. DISCUSSION

### A. Right to a speedy trial

For the first time on appeal, the appellant argues he was denied his right to a speedy trial guaranteed by R.C.M. 707, Article 10, UCMJ, and the Sixth Amendment to the Constitution because he was not brought to trial within 120 days, or in a speedy manner, and did not knowingly and voluntarily waive his speedy trial rights.

---

[1] *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984).

[2] TDC ultimately relied on *United States v. Mason*, 19 M.J. 274 (C.M.A. 1985) (summary disposition) and Article 13, UCMJ, in support of their motion.

We review claims regarding an appellant's right to a speedy trial *de novo*. *United States v. Cooper*, 58 M.J. 54, 57 (C.A.A.F. 2003).

### 1. Right to a speedy trial pursuant to R.C.M. 707, UCMJ

A military "accused shall be brought to trial within 120 days after the earlier of: (1) [p]referral of charges; (2) [t]he imposition of restraint under R.C.M. 304(a)(2)-(4); or (3) [e]ntry on active duty under R.C.M. 204." R.C.M. 707(a). Restraint under R.C.M. 304 includes restriction in lieu of arrest, arrest, and confinement—all of which involve the accused's moral or physical restraint to specified limits. "A failure to comply with this rule will result in dismissal of the affected charges." R.C.M. 707(d). But "a plea of guilty which results in a finding of guilty waives any speedy trial issue as to that offense." R.C.M. 707(e).[3]

The appellant's alleged deprivation of his R.C.M. 707 right to a speedy trial rests entirely on the passage of 143 days from his entrance into pretrial confinement on 18 August 2015, through his pretrial restriction to his arraignment and trial on 8 January 2016.[4] Despite this prima facie violation of R.C.M. 707, the appellant waived his claim when he entered unconditional guilty pleas at court-martial and was convicted. Thus we find no violation of the appellant's right to speedy trial under R.C.M. 707.

The appellant challenges the voluntariness of his waiver of R.C.M. 707, alleging his TDC did not advise him of his right. Citing his "'fundamental' constitutional right to a speedy trial,"[5] recognized in *Barker v. Wingo*, 407 U.S. 514, 515 (1972), the appellant urges us to disregard this waiver. Instead of setting aside the appellant's guilty plea for a lack of voluntariness and providence, we will instead examine the appellant's right to a speedy trial under Article 10, UCMJ. In doing so, we accept the appellant's invitation to apply *Barker v. Wingo* to his case by considering its criteria.

---

[3] R.C.M. 707(e) explicitly carves out an exception to its automatic waiver rule for conditional pleas, which are provided for in R.C.M. 910(a)(2).

[4] The record indicates the Article 32, UCMJ, preliminary hearing officer approved seven days of excludable delay in response to the appellant's two continuance requests before the Article 32, UCMJ, preliminary hearing, pursuant to R.C.M. 707(c)(1). *See* Investigating Officer's Report, Block 21. The appellant's calculation of 143 days of delay between pretrial confinement on 18 August 2015 and trial on 8 January 2016 does not reflect that exclusion. Correctly reflecting the excludable delay, the R.C.M. 707 delay should be 136 days. This difference is not material to our opinion.

[5] Appellant's Brief of 25 Aug 2016 at 9.

### 2. *Right to a speedy trial pursuant to Article 10, UCMJ*

"[A] servicemember who enters an unconditional guilty plea may appeal a speedy trial claim under Article 10 only if the accused has invoked Article 10 at trial by filing and litigating an Article 10 motion at trial." *United States v. Tippit*, 65 M.J. 69, 75 (C.A.A.F. 2007); *see also United States v. Dubouchet*, 63 M.J. 586, 588 (N-M. Ct. Crim. App. 2006) (holding that "an unconditional guilty plea that ultimately results in a guilty finding waives an Article 10 speedy trial issue as to that offense when raised for the first time on appeal") (citations omitted). But the appellant has asserted he did not knowingly and voluntarily waive his right to file an Article 10, UCMJ, motion. Assuming *arguendo* that the appellant did not waive this avenue of relief, we examine his claim.

The UCMJ codifies a service member's right to speedy trial in statute: "When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." Art. 10, UCMJ.

Arrest or confinement of a service member triggers the government's obligation to take immediate steps toward trial. Art. 9(a), UCMJ, defines arrest as "the restraint of a person by an order, not imposed as a punishment for an offense, directing him to remain within certain specified limits. Confinement is the physical restraint of a person." R.C.M. 304 distinguishes between arrest and "[r]estriction in lieu of arrest," defining the latter as "the restraint of a person by oral or written orders directing the person to remain within specified limits; a restricted person shall, unless otherwise directed, perform full military duties while restricted." The Discussion to R.C.M. 304 further elaborates:

> Restriction in lieu of arrest is a less severe restraint on liberty than is arrest. Arrest includes suspension from performing full military duties and the limits of arrest are normally narrower than those of restriction in lieu of arrest. The actual nature of the restraint imposed, and not the characterization of it by the officer imposing it, will determine whether it is technically an arrest or restriction in lieu of arrest.

In determining "[w]hether a particular restriction amounts to arrest for the purposes of Article 10, UCMJ," the Court of Appeals for the Armed Forces (CAAF) has referred us to "such factors as the geographic limits of constraint, the extent of sign-in requirements, whether restriction is performed with or without escort, and whether regular military duties are performed." *United States v. Schuber*, 70 M.J. 181, 187 (C.A.A.F. 2011) (holding that Schuber's restriction was not tantamount to arrest when he "was restricted to base

rather than to quarters. Although he was required to provide weekly urine samples, he was permitted to avail himself of all usual base activities. He was also given a three-day pass to grieve with his family upon the death of his grandfather. He was not placed under guard or escort during his base restriction or travel. Nor did the restriction orders suspend [Schuber] from performing full, meaning normal, military duties.").

In this case, the appellant continued to perform his normal duties, but he was subject to more restrictive conditions than those in *Schuber*. He could not leave his barracks without an escort; he was able to leave the base to run errands with an escort, but he did not travel further; he was required to muster several times daily; he could not access many of the base's amenities; and he could not receive visitors. Based on these facts, we find the appellant's restraint was arrest for purposes of Article 10, UCMJ.

As the appellant was under arrest, his command was required to take immediate steps toward his trial or dismissal of charges and release. Art. 10, UCMJ. Immediacy "is not constant motion, but reasonable diligence in bringing the charges to trial." *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005) (citations and internal quotation marks omitted). We consider four factors the Supreme Court identified in *Barker v. Wingo* to determine if the government's delay in bringing the appellant to trial was not reasonable and thus deprived him of his right to a speedy trial. *United States v. Birge*, 52 M.J. 209, 212 (C.A.A.F. 1999). The four factors are "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. Finally, "we remain mindful that we are looking at the proceeding as a whole and not mere speed." *Mizgala*, 61 M.J. at 129.

First, the appellant must be able to point to "some delay which is presumptively prejudicial" in order to trigger *Barker's* four-factor analysis. *Barker*, 407 U.S. at 530. Although the *Barker* court found "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months," *id.* at 523, the President has designated 120 days as a presumptively prejudicial length of delay in trying courts-martial. R.C.M. 707; MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) App. 21, at A21-42. Delay in excess of 120 days[6] between the appellant's pretrial confinement and trial demonstrate presumptively prejudicial delay in this case. This satisfies the first *Barker* factor in favor of the appellant and leads us to examine the remaining three.

---

[6] Whether we rely on the appellant's count of 143 days of delay or our count of 136 days, explained in n. 4, the delay exceeds 120 days.

"Reason for the delay" is the second factor. *Barker*, 407 U.S. at 530. Without findings of fact developed during litigation of an Article 10, UCMJ, motion at the trial court, there is minimal evidence about delay in the record.[7] The timeline in this case reveals delays between case milestones that could have been shorter, but nowhere in the timeline does the prosecution appear to languish. More significantly, the appellant presents no evidence of willful or malicious conduct on the part of the government. *See Birge*, 52 M.J. at 212 (concluding "[t]here is no evidence of willful or malicious conduct on the part of the Government to create the delay" before finding Birge's appellate Article 10, UCMJ, claim "readily resolved [unfavorably] under the *Barker v. Wingo* . . . factors"). As in *Birge*, the appellant fails to make the case for an Article 10, UCMJ, violation with this factor.

The third factor, the appellant's "assertion of his right," 407 U.S. at 530, also inures to the government. Nowhere in the record does the appellant raise R.C.M. 707, Article 10, UCMJ, or the right to a speedy trial. The *Barker* court noted that "[t]he more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id*. at 531-32.

The appellant's failure to raise his right to speedy trial, particularly in light of TDC's successful motion for confinement credit, significantly weakens his current argument for an Article 10, UCMJ, violation. We will address the appellant's claim that his failure to raise Article 10, UCMJ, is attributable to his TDC's failure to advise him of the right *infra*.

Finally, we consider the "prejudice to the [appellant]." *Id*. at 530. Prejudice to the appellant "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. . . . (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id*. at 532. The most serious prejudice concerns when the passage of time diminishes the defendant's ability to mount a defense, such as through the loss of witnesses or of their memories. *Id*.

The appellant alleges prejudice in pretrial restriction "equivalent to unduly oppressive pretrial incarceration," "conditions on his liberty, separation from his family, and 'living under a cloud' of suspicion," and

---

[7] The *Barker* Court "emphasize[d] that failure to assert the right [to a speedy trial] will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 532.

"restriction [that] hindered his ability to meet with witnesses or revisit his home to gather potentially relevant evidence."[8]

While the appellant's pretrial restriction amounted to arrest, it was not oppressive pretrial incarceration. Nevertheless, the military judge awarded the appellant day-for-day credit for his pretrial confinement and restriction, sparing him any of his awarded confinement. *See Birge*, 52 M.J. at 212 (noting that the "appellant received credit for his pretrial confinement on his sentence" in holding that the facts were "not sufficient to raise the issue of an Article 10 violation").

Aside from some of the provisions of his restriction, such as the prohibition against receiving visitors, the appellant has offered no evidence that delay caused anxiety and concern beyond what is normally experienced while an accused is restrained, separated from family, and facing a court-martial. *See United States v. Wilson*, 72 M.J. 347, 354 (C.A.A.F. 2013) (expressing the CAAF's concern "not with the normal anxiety and concern experienced by an individual in pretrial confinement, but rather with some degree of particularized anxiety and concern greater than the normal anxiety and concern associated with pretrial confinement").

The appellant has presented no evidence that delay hindered his defense. The appellant's only witness at the court-martial was his wife, the victim of his aggravated assault. An MPO, not the conditions of his pretrial restriction, prevented the appellant from speaking or meeting with her. If anything, time allowed the wife's feelings toward her husband to soften. Contrary to his assertion, the appellant was able to visit his on-base residence, and he has not named any other witnesses he was unable to consult during his pretrial restriction or how they would have contributed to his defense. His inability to receive visitors would not have barred them from his TDC's office. Without some evidence of delay harming the appellant's ability to defend himself, we find no material prejudice to the appellant's substantial rights.

The appellant can successfully attack the government's speed in prosecuting his case with the number of days on the R.C.M. 707 clock, but he cannot demonstrate a lack of reasonable diligence. When the 120th day passed, the appellant had signed a pretrial agreement, and a trial date two weeks hence was either on the docket or would imminently appear there.[9] A lack of speed does not overcome the diligence reflected in that fact.

---

[8] Appellant's Brief of 25 Aug 2016 at 30-31.

[9] Subtracting the seven days of excludable delay from the day count beginning 19 August 2015, day 120 fell on 23 December 2015.

Considering all four *Barker* factors in the context of the proceeding as a whole, we find no merit in the appellant's Article 10, UCMJ, claim.

3. *Right to a speedy trial guaranteed by the Sixth Amendment to the Constitution*

The Sixth Amendment to the Constitution provides, that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. CONST. amend. VI. "In the military, Sixth Amendment speedy trial protections are triggered upon preferral of charges or the imposition of pretrial restraint." *United States v. Danylo*, 73 M.J. 183, 186 (C.A.A.F. 2014) (citation omitted). However, an unconditional guilty plea which results in a finding of guilty "waives any speedy trial issue as to that offense under the Sixth Amendment." *Tippitt*, 65 M.J. at 75 (citing *Mizgala*, 61 M.J. at 125).

Here, the appellant's unconditional guilty plea and resulting guilty finding waived any claim of a speedy trial violation under the Sixth Amendment, and thus we find no violation.

## B. Ineffective assistance of counsel

The appellant argues his Sixth Amendment right to effective assistance of counsel was violated because his defense counsel failed to raise a speedy trial violation before the trial court and failed to advise him of the right altogether.

The court reviews the effectiveness of counsel and the resulting prejudice of any errors *de novo*. *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006).

An appellant challenging the effectiveness of his TDC must satisfy the two-part test in *United States v. Strickland*, 466 U.S. 668, 687 (1984). *Id.*

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

In evaluating TDC's competence, "[w]e will not second-guess the strategic or tactical decisions made at trial by defense counsel" as long as the record reflects action where it should occur. *United States v. Rivas*, 3 M.J. 282, 289 (C.M.A. 1977); *see also United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F.

2000) (noting that "[a] defense counsel is presumed to be competent. . . . Judicial scrutiny of such a claim is highly deferential and should not be colored by the distorting effects of hindsight") (citation omitted).

The appellant alleges error in his TDC's failure to raise a motion for a speedy trial. But TDC raised a timely motion for confinement credit for every day the appellant spent in pretrial restriction. The appellant does not acknowledge this motion and how it conflicts with his assertion of the right to a speedy trial. *See Barker*, 407 U.S. at 521 ("Delay is not an uncommon defense tactic.") Every day the appellant remained in pretrial restriction increased the balance the military judge might convert into credit against the appellant's sentence to confinement. And the appellant continued to collect full pay and allowances during pretrial restriction. He has failed to demonstrate how prioritizing confinement credit over a weak speedy trial claim and allowing additional days of potential confinement credit to accrue constitutes deficient performance. *See Dubouchet*, 63 M.J. at 589 (noting that "the appellant fails to acknowledge and address any of the tactical reasons why the defense counsel would not raise a speedy trial issue" before rejecting "the appellant's assertion that his counsel's performance was ineffective").

Turning now to the second *Strickland* prong and prejudice, we must first discern what prejudice the appellant alleges. As with most guilty pleas, prejudice does not turn on the reliability of the outcome of the trial. Instead, the appellant asserts that, but for the error alleged, he would have pled not guilty and insisted on going to trial. *Alves*, 53 M.J. at 289-90. In his reply brief, the appellant implies that had he been aware of his right to a speedy trial, he would have withdrawn his guilty plea and pursued his right. He fails to acknowledge that an accused may file an Article 10, UCMJ, motion and still plead guilty to the underlying charge. *See Mizgala*, 61 M.J. at 127 (holding that "a litigated speedy trial motion under Article 10 is not waived by a subsequent unconditional guilty plea"). As the appellant has not contested the providence of his plea to aggravated assault, we conclude he does not seek to relitigate his conviction.

Instead, his alleged prejudice is more likely the missed opportunity to pursue dismissal of his charge for an Article 10, UCMJ, violation.

> When an allegation of ineffective assistance of counsel is based on a failure to make a motion, the appellant must show that there is a reasonable probability that such a motion would have been meritorious. . . . In order to meet this burden, an appellant has the responsibility to bring to an appellate court's attention facts rather than mere speculation.

*Dubouchet*, 63 M.J. at 589 (citations and internal quotation marks omitted). In the appellant's original brief, he argued "it is reasonably probable that a

reasonable, conscientious, and impartial military judge would have ruled in favor of a speedy trial motion and dismissed the sole charge since the Government had committed a *per se* violation of RCM 707(a) by not bringing Appellant to trial for 143 days since the 707 clock had begun to run, well beyond the 120 day maximum required by RCM 707."[10] Again, the single fact supporting the appellant's claim of a speedy trial violation is the R.C.M. 707 day count. A military judge hearing the appellant's motion for dismissal under R.C.M. 707 might dismiss with prejudice "where the accused has been deprived of his or her constitutional right to a speedy trial." R.C.M. 707(d)(1). Having analyzed the alleged deprivation of the appellant's constitutional right to a speedy trial in accordance with *Barker* in the previous section, we conclude that the appellant's motion for dismissal with prejudice would not be meritorious.[11] Without a meritorious motion, the appellant cannot demonstrate prejudice.

With neither deficient performance nor prejudice, we decline to find ineffective assistance of counsel for failing to raise speedy trial under R.C.M. 707 or Article 10, UCMJ.

Finally, we address the appellant's claim that his TDC erred by failing to advise him of his right to speedy trial, much less pursue it. "If we conclude that any error would not have been prejudicial under the second prong of *Strickland*, we need not ascertain the validity of the allegations . . . ." *United States v. Saintaude*, 61 M.J. 175, 179-180 (C.A.A.F. 2005). Having concluded the appellant suffered no prejudice from alleged deprivation of his right to a speedy trial, we find no merit in this allegation of ineffective assistance of counsel.

## C. Restriction not tantamount to confinement

Lastly, the appellant argues the military judge erred by finding his pretrial restriction was not tantamount to confinement.

"We review *de novo* the ultimate legal question of whether certain pretrial restrictions are tantamount to confinement." *United States v. King*, 58 M.J. 110, 113 (C.A.A.F. 2003) (citations omitted).

TDC sought confinement credit for the appellant under two separate but related theories—*United States v. Mason*, 19 M.J. 274 (C.M.A. 1985) (summary disposition), and Article 13, UCMJ.[12] The military judge found the

---

[10] Appellant Brief at 37.

[11] We decline to find an R.C.M. 707 motion resulting in the dismissal of the charge without prejudice and the likely re-referral of the charge without the benefit of the negotiated pretrial agreement meritorious.

[12] Article 13, UCMJ provides that:

appellant's pretrial restriction violated Article 13, UCMJ, and thus merited day-for-day confinement credit. Therefore, we will not reconsider the judge's finding that certain restrictions upon the appellant served no "legitimate purpose . . . other than to punish"[13] him. Instead we will limit our review of the military judge's denial of *Mason* credit and the case law interpreting that credit.

In *Mason*, our superior court extended the day-for-day credit received for pretrial confinement to pretrial restriction it deemed "equivalent to confinement." 19 M.J. at 274. Soon thereafter, the Army's Court of Military Review held that "[t]he determination whether the conditions of restriction are tantamount to confinement must be based on the totality of the conditions imposed." *United States v. Smith*, 20 M.J. 528, 530 (A.C.M.R. 1985); *see also King*, 58 M.J. at 113. Factors comprising the totality of the conditions imposed include:

> [T]he nature of the restraint (physical or moral), the area or scope of the restraint (confined to post, barracks, room, etc.), the types of duties, if any, performed during the restraint (routine military duties, fatigue duties, etc.), and the degree of privacy enjoyed within the area of restraint. Other important conditions which may significantly affect one or more of these factors are: whether the accused was required to sign in periodically with some supervising authority; whether a charge of quarters or other authority periodically checked to ensure the accused's presence; whether the accused was required to be under armed or unarmed escort; whether and to what degree accused was allowed visitation and telephone privileges; what religious, medical, recreational, educational, or other support facilities were available for the accused's use; the location of the accused's sleeping accommodations; and whether the

---

> No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

*See United States v. Chapa*, 57 M.J. 140, 141 (C.A.A.F. 2002) (drawing a distinction between a request for relief for illegal pretrial punishment in violation of Article 13, UCMJ, and the assertion that restriction was tantamount to confinement and thus merited the protections of R.C.M. 305 and credit pursuant to *Mason*, 19 M.J. at 274).

[13] Record at 53.

accused was allowed to retain and use his personal property (including his civilian clothing).

*Smith*, 20 M.J. at 531-32; *see also King*, 58 M.J. at 113. Analysis of those factors reveals "levels of restraint . . . which fall somewhere on a spectrum that ranges from 'restriction' to 'confinement.' If the level of restraint falls so close to the 'confinement' end of the spectrum as to be tantamount thereto, [an] appellant is entitled to appropriate and meaningful administrative credit against his sentence." *Smith*, 20 M.J. at 531. The CAAF has also "consider[ed] 'the prior examples of such cases . . . and the factors gleaned from them' in determining whether pretrial restriction is tantamount to confinement." *King*, 58 M.J. at 113 (citation omitted).

In the case before us, the appellant received a restriction order with the following provisions:

- restriction to his barracks room, normal work area, any base chapel on Sundays, the infirmary, the mess hall, and the 21 Area Exchange, barbershop, dry cleaners, and fitness center;

- regular musters in the uniform of the day or utilities with the barracks noncommissioned officer (NCO) four times per workday and every two hours between 0700 and 1500 then at 1800, 2000, and 2145 on weekends and holidays;

- required notification of the barracks NCO and an NCO escort when leaving the barracks;

- no use of alcohol or other intoxicants, attendance at any service club, movie theater, or Morale, Welfare, and Recreation activity, or participation in intramural sports;

- no operation of a privately-owned vehicle; and

- no visitors.

But the appellant retained:

- performance of his regular military duties;

- use of his cell phone and other personal electronics in his barracks room; and

- the ability to visit his on-base residence and conduct business off-base with advance permission and an NCO escort.

The command legal officer testified that the appellant received the same restriction order given to Marines awarded restriction at a court-martial or nonjudicial punishment proceeding. She understood that the appellant's pretrial restriction was to be more relaxed than post-trial restriction, but the

government presented no evidence that the appellant was advised of the supposedly relaxed provisions.

Although bound by a post-trial restriction order, the appellant enjoyed privileges post-trial restrictees did not. He continued to perform his normal duties at his command instead of being assigned to a work detail. Although required to travel with an escort, he was able to retrieve possessions from his on-base residence and run errands off-base, including a trip to the bank. The appellant believed he was not permitted visitors outside his chain of command, but he was allowed to use his cell phone and any personal electronics in the privacy of his barracks room. The appellant's muster requirements were no more onerous and his movements were no more restricted than those of the post-trial restrictees. Moral restraint on his movement was consistent with the MPO and the command's responsibility to protect his wife, who lived aboard Camp Pendleton. In light of evidence that the appellant had been drinking before the alleged assault, the requirement that the appellant abstain from alcohol was reasonably related to his wife's safety. However, the prohibitions against receiving visitors, using recreational facilities, participating in intramural sports, and his berthing assignment with post-trial restrictees were punitive, post-trial restriction provisions. Nevertheless, they were closer on the spectrum to routine restriction orders than confinement.

Comparing the appellant's case with others also supports the conclusion that the appellant's restriction was not tantamount to confinement. *See King*, 58 M.J. at 111-12, (holding that King's restriction to his dormitory, dining facility, squadron building, and defense counsel's office, reassignment to cleaning and manual labor duties, requirement to muster twice per day, and inability to use the gym was not tantamount to confinement); *United States v. Guerrero*, 28 M.J. 223, 224-25 (C.M.A. 1989) (holding that Guerrero's restriction to his room, the latrine, the chapel, mess hall and other places of duty, required NCO escort, and required muster "every 30 minutes until normal 'lights out'" was not tantamount to confinement); *United States v. Parker*, 75 M.J. 603, 610-11 (N-M. Ct. Crim. App. 2016) (holding that Parker's restriction to the base with permission to visit the Exchange, gym, on-base food establishments, and other base facilities with an escort, requirement to muster every two hours during the day, prohibition against receiving visitors, and reassignment to routine administrative functions was not tantamount to confinement). *Cf Smith*, 20 M.J. at 530, 532 (holding that Smith's prohibition against private telephone conversations, limitations on receipt of visitors, requirement to muster every 30 minutes in the evenings and on non-duty days, and requirement to leave his barracks room door unlocked was tantamount to confinement). The appellant's circumstances were also less restrictive than those that prompted the *Mason* court to extend

confinement credit to pretrial restriction—restriction to a dayroom with permission to go, under escort, only to the latrine, chapel, and mess hall, hourly musters, and exclusion from training. *Smith*, 20 M.J. at 531.

Thus we concur with the military judge that the appellant suffered pretrial punishment, in contravention of Article 13, UCMJ, but the conditions were not tantamount to confinement as required for *Mason* credit.

### III. CONCLUSION

The findings and the sentence as approved by the CA are affirmed.

Judge RUGH and Judge JONES concur.

For the Court

R.H. TROIDL
Clerk of Court